**MARKEN AND BIELFELD, INCOR-
PORATED, etc.**

v.

**BAUGHMAN COMPANY.**

Civ. A. No. 2376.

United States District Court
E. D. Virginia,
Richmond Division.

June 18, 1957.

George R. Humrickhouse, Richmond, Va., for plaintiff.

H. Merrill Pasco, Richmond, Va., for defendant.

STERLING HUTCHESON, Chief Judge.

The issues here presented involve an alleged infringement by the defendant of the copyright of the plaintiff to a map entitled "The Beautiful Caverns of Luray Folder Map". The facts may be summarized as follows:

The plaintiff, a printing firm of Frederick, Maryland, has been engaged in printing maps for the Luray Caverns Corporation, of Luray, Virginia, referred to as the corporation, beginning about 1925 and continuing through 1953. During this time a number of folders were printed for the purpose of advertising the Caverns. The folder showed a map of the highways, towns and cities in the area adjacent to the Caverns along with pictures and descriptive material. The maps were prepared by Captain William H. Gill, a cartographic engineer of Washington, D. C., who is a retired army engineer with long experience in the preparation of maps for the United States Geological Survey and other Government agencies. In 1925, after his retirement, he was engaged by the plaintiff to prepare a base map to be used in advertising the Luray Caverns. In the preparation of this map he reduced by a mechanical device a map of the United States Geological Survey to the size desired for purposes of the folder. The reduced reproduction of the map showed

no roads but he spotted the locations of the towns on that map and worked in the waterways used, including the Chesapeake Bay, the James River and the Atlantic Coast. After placing the locations of the towns, Captain Gill examined various maps prepared by oil companies, the states and the A.A.A. After examination of such maps Captain Gill drew in the roads connecting the various towns with the appropriate highway numbers. In the preparation of succeeding maps appropriate changes with respect to current road locations and designations were made. At various intervals between 1926 and 1953 these succeeding maps were copyrighted by the plaintiff. The copyrighted map in 1951 shows certain changes in the areas around Roanoke and Williamsburg, Virginia. This fact is of importance. In 1951 the corporation requested that Roanoke and Williamsburg which had not appeared on the preceding maps, be brought into the map to be used.

In order to do this it was necessary that those portions of the map showing the general area in which those cities are located be distorted in order that they be shown. To do so it was necessary that the locations of the roads traversing the areas be adjusted in order that they fit between the points involved. The result is that there is a difference in the scale of the maps in the portion affected. In referring to the scale of the map it should not be understood that the roads appearing on any portion of the map are drawn to scale. Upon the contrary, they are mere representations of the approximate locations without reference to a scale as commonly understood. The inclusion of Roanoke and Williamsburg in the 1951 map appears to be the principal claim to copyrightability asserted by the plaintiff. With the exception of these changes, the 1951 map is practically a duplication of previous maps, although, as stated, current highway locations and numbers were used for each publication. The map

upon which the plaintiff relies to support its allegations of infringement is one prepared in 1953 shown on the folder and filed as Plaintiff's Exhibit No. 2. That folder contains copyright claim of the corporation of 1950, and the plaintiff's copyright claim to the map dated 1953. It is a reproduction of the 1951 map with only one change. On the question respecting the changes between the map copyrighted in 1951 and the map copyrighted in 1953, Captain Gill testified that the only difference was a change in designation of state highway No. 12 to U. S. highway #· 340.*

In 1954 the corporation awarded a contract to the defendant for printing the folder and at that time provided the defendant with a copy of the 1953 map (Plaintiff's Exhibit No. 2), indicating certain desired changes. The defendant made an enlarged photograph of the map and after making some changes proceeded to produce the desired printing. It is the contention of the plaintiff that the map so produced infringes the plaintiff's 1953 copyright.

Questions raised by the defense are (1) whether the maps relied upon contain sufficient original work to be protected by copyright; (2) whether the 1953 map contains adequate new matter to warrant separate registration; and (3) whether the 1953 map is identical with the 1951 map and void as a duplicate copyright.

The controlling principles were applied in General Drafting Co. v. Andrews, 2 Cir., 1930, 37 F.2d 54; Andrews v. Guenther Publishing Co., D.C.1932, 60 F.2d 555; Amsterdam v. Triangle Publications, Inc., 3 Cir., 1951, 189 F.2d 104; and Crocker v. General Drafting Co., D.C.1943, 50 F.Supp. 634. These appear to be leading cases upon the subject of the amount of originality required to meet the test as to whether the map is a proper subject of copyright. While it is not required that the compilation be the sole product of the maker, it is clear that

---

* There were some slight changes in directions appearing in the margin. For example, the words "to Greensboro" were omitted and some other changes of a similar nature were made. Ex. 2.

something more than the compilation of information procured by others is required to make a map copyrightable. There must be originality resulting from the independent effort of the maker in acquiring a reasonably substantial portion of the information. It follows that of necessity the facts of each case differ.

 As I view the evidence, Captain Gill prepared his base map from material collected by others, with such omissions as he saw fit to serve the purpose desired. The reduction in size by the use of a mechanical instrument is not an original idea. The omission of towns, highways or other markings superfluous for his purpose is not an indication of originality. The free-hand location of highways between points does not constitute new information but merely the act of a draftsman in delineating such highways in a method suitable for his purpose. The record discloses no effort on his part to verify the correctness of the map by communicating with individuals or local agencies in the area affected. It is true that there is some testimony concerning information given him by Mr. Simmons but this related principally to the elimination of information which was not desired. There is a reference to additions suggested by Mr. Simmons but the only one pointed to was a change of the road from Warrenton to Culpeper which would be reflected on official maps (Tr. 9). It is conceded that Captain Gill made no personal inspection of any of the areas shown on the map. As indicated, the only significant changes made by Captain Gill consisted of an adjustment of areas around Roanoke and Williamsburg, first appearing on the 1951 map in order that those cities might be shown. Apparently this adjustment consisted only of a contraction or restriction of the portion of the outer edge of the map so as to bring into the picture these cities.

It is therefore my conclusion that the map relied upon does not contain sufficient original work to be protected by the copyright.

 Turning to whether the 1953 map contains adequate new matter to warrant

separate registration, it appears clear that the 1953 map does not contain sufficient new matter to warrant such registration. Admittedly, the only variation between the 1951 map and the 1953 map is the change of a highway designation from State Route 12 to U. S. 340 (Tr. 38). The necessity of making such change would be obvious to anyone who checked the map with the then current highway numbers.

Under the applicable authorities and in reason and principle it would appear that under the proper rule the copyright of the 1953 map is void as a duplicate. See Caliga v. Inter Ocean Newspaper Co., 215 U.S. 182, 30 S.Ct. 38, 54 L.Ed. 150, and Markham v. A. E. Borden Co., D.C., 108 F.Supp. 695; 1 Cir., 206 F.2d 199.

In view of the conclusions here stated, it is not necessary to pass upon the contention of defendant that registration of the 1953 map forfeits such rights as the plaintiff may have acquired under the 1951 copyright, in support of which they rely upon Baker v. Taylor, C.C.S.D.N.Y. 1848, 2 Fed.Cas. No. 782.