B. Loring Young,<br/>Referee in Bankruptcy.

William L. Berger, of Boston, Mass., for Horace J. Martin.

Francis E. Drohan, of Boston, Mass., for trustee in bankruptcy.

LOWELL, District Judge.

At Boston, in said district, on the 20th day of June, A. D. 1932, upon the question certified to the court by the referee in said matter on the 9th day of May, A. D. 1932, now therefore after hearing argument of William L. Berger, counsel for Horace J. Martin, and Francis E. Drohan, of counsel for the trustee in bankruptcy being present and not heard, Now after due consideration of the same:

It is hereby ordered and decreed that the order of the referee dismissing the petition of Horace J. Martin to establish as a provable debt against said bankrupt estate a contract based upon the purchase of stock with a repurchase agreement, be and it hereby is affirmed.

It is further ordered that the clerk send a copy of this order by mail to the referee.

## ANDREWS v. GUENTHER PUB. CO.

District Court, S. D. New York.<br/>July 12, 1932.

Maxwell S. Mattuck, of New York City, for plaintiff.

Whitman, Ransom, Coulson & Goetz, of New York City (Robert E. Coulson, of New York City, of counsel), for defendant.

KNOX, District Judge.

Plaintiff, a map publisher, has brought suit for infringement of copyright of its "Principal Cities Map of North America, No. 960." This is a map of North America which shows only a bare outline of the continent, the international boundaries, and plaintiff's selection of over one hundred of the most important cities, designated by three different kinds of symbols and types according to whether their populations are under 100,000, between 100,000 and 500,000, or over 500,000 inhab-

itants. Defendant publishes a weekly magazine called, "The Financial World." In its issue of May 7, 1930, there appeared an article by one of its editors entitled, "An Overlooked Amusement Stock," describing the financial prospects of the Shubert Company, which owns, leases, and operates many theaters throughout the country. This article was illustrated by a bare outline map of the United States on which were located and named' the twenty-six cities in which the Shubert Company had theaters. The proof shows that the United States portion of plaintiff's map was undoubtedly used as a base in the preparation of defendant's illustration. It also appears that defendant had no knowledge of plaintiff's claim to copyright at the time plaintiff's map was so used.

There is no issue as to whether defendant used plaintiff's copyright work. That is admitted. The chief point of controversy is whether plaintiff's map No. 960, or any portion of it, can be the subject of copyright.

The latest and most pertinent case dealing with this question is General Drafting Company v. Andrews, 37 F.(2d) 54 (C. C. A. 2d). Suit there was brought against the plaintiff in the case at bar charging infringement of four copyrighted automobile road maps. It was held that the relatively great number of identical errors and peculiarities in spelling was sufficient to show infringement, where the explanatory testimony of defendant's one witness was discredited by modifications, shiftings, and inconsistencies. With regard to the copyrightability of plaintiff's map, the court said, at page 55 of 37 F.(2d):

"The method pursued by plaintiff in preparing its New Jersey map is typical. Two sets of topographical maps prepared by the Geological Survey of the Department of Interior, covering the desired area, were secured; through personal interviews, detailed information concerning road conditions was obtained from the county engineers in each New Jersey county and was recorded on one of the Geological Survey maps. The condition of each road was designated as 'first class,' 'second class,' or 'third class,' having regard solely to its availability for automobile travel. In addition, the actual physical condition of the road was in many cases verified by travel. The detailed information thus collected was transferred to a base map composed of a large number of individual Geological Survey maps. At this stage, the process of selection was begun; a large tracing was made of the assembled section maps, but only such information as the map-maker thought would be of use to motorists was taken over—that is, selected highways, rivers, towns, state lines, etc. The relative condition of each road was indicated on the tracing by a double, heavy single, or thin single line. * * *

"Comparison of the base maps and sectional or detail maps with the finished product show a considerable amount of originality in preparation. The final maps are manifestly different from those used in making them, and represent a great deal of skill, labor, and expense. The elements of the copyright consist in the selection, arrangement, and presentation of the component parts."

The amount of original work done by plaintiff in the instant case was in no way comparable to that done by the plaintiff in the above-cited case. Here all that was done was as follows:

Plaintiff procured a map published by the United States Geological Survey and gave it to Mr. Tudor, his draftsman, to use as a base in the preparation of plaintiff's outline map of North America No. 930. Mr. Tudor made a photostat of the Geological Survey map in reduced size, and then made a tracing from the photostat of the outline of the continent, the Great Lakes, and the international boundary lines, omitting all physical features, together with latitudinal and longitudinal lines. He also eliminated many indentures in the coast line, thus rendering it smoother and simpler in appearance, although geographically less accurate. The map, in final form, was printed, published, and registered in the Copyright Office in Washington. The steps so far indicated were taken in the creation of plaintiff's outline map of North America No. 930, concerning which plaintiff makes no claim of infringement in this suit.

Plaintiff then prepared a list of what he considered the principal cities of North America, partly from memory and partly from the United States census reports. He gave this list to Mr. Tudor, instructing him to place the cities on the outline map No. 930, to indicate their populations by three different symbols, to underscore the national capitals, and, so far as possible, to keep the names of the cities horizontal. Mr. Tudor did this, locating the positions of most of the cities by eye from the Geological Survey Map, and adding Scranton, Jersey City, Long Beach, Oakland, and Reno, which did not appear thereon. Many of the cities were slightly misplaced in order that their names could be written more legibly. After the title and

legend were prepared, the map, denominated, "Principal Cities Map of North America, No. 960," was printed, published, and registered in the Copyright Office. It is this map which plaintiff claims is infringed.

In my opinion, map No. 960 is not a valid subject of copyright. To be entitled to copyright, a composition must be the result of some original work. General Drafting Company v. Andrews, supra; Hoffman v. Le Traunik (D. C.) 209 F. 375; American Code Company v. Bensinger (C. C. A.) 282 F. 829. It cannot be copied from a government publication. Du Puy v. Post Telegram Co. (C. C. A.) 210 F. 883; Woodman v. Lydiard-Peterson Co. (C. C.) 192 F. 67. Nor can it be a copy of a prior work upon which plaintiff has previously obtained a copyright. Caliga v. Inter-Ocean Newspaper Company (C. C. A.) 157 F. 186, affirmed 215 U. S. 182, 30 S. Ct. 38, 54 L. Ed. 150. And, where a copyright is obtained upon a collection of works, some of which have been previously published (some with copyright and some without), the copyright protects only what is original in the new collection. Kipling v. G. P. Putnam's Sons (C. C. A.) 120 F. 631, 65 L. R. A. 873.

Since plaintiff here admittedly took the outline for its map No. 930 from a government Geological Survey map, the validity of its copyright thereon may be open to doubt. But, even if it be valid, plaintiff would not be aided thereby in this litigation. The reason is that the map places the continental outline and international boundaries outside of any protection that can be afforded by the copyright of the later map No. 960. Caliga v. Inter-Ocean Newspaper Company, supra; Kipling v. G. P. Putnam's Sons, supra. If the copyright of map No. 960 is to be upheld, therefore, it must be by virtue of some originality or industry thereon that was not included in map No. 930. The only thing that is new is the addition of the "principal cities." If the selection of these cities is the result of original work, the copyright will protect this feature of the map. But the proof fails to reveal anything that can be called original work within the meaning of the decided cases. All but four or five of the cities selected were on the United States Geological Survey map. All that plaintiff did was to copy part of this government publication. The fact that he had to exercise some choice in taking some cities and rejecting others is far from constituting such originality as to form a basis for copyright. Similarly, the misplacement of some of the cities, and the use of three different kinds of type and symbols, is too trivial a difference to sustain its validity. The cases in which copyrights on directories, digests, maps, and other compilations have been upheld, all involved at least a modicum of creative work, as distinguished from mere copying, that is entirely lacking in the case at bar. See General Drafting Company v. Andrews, supra; Jeweler's Circular Publishing Company v. Keystone Publishing Company (C. C. A.) 281 F. 83, 26 A. L. R. 571; Woodman v. Lydiard-Peterson Co., supra; West Publishing Company v. Edward Thompson Company (C. C. A.) 176 F. 833; American Code Company v. Bensinger, supra.

For these reasons, the validity of plaintiff's copyright, at least as to the United States portion of the map, cannot be sustained, and the complaint will be dismissed.