**GROUP PUBLISHERS, Inc. v. WINCHELL et al. (EAGLE–LION FILMS, Inc., third-party defendant).**

United States District Court
S. D. New York.

Oct. 11, 1949.

574

Lackenbach & Hirschman, New York City, Armand E. Lackenbach, New York City, of counsel, for plaintiff.

McCauley & Henry, New York City, for defendants.

Phillips, Nizer, Benjamin & Krim, New York City, Louis Nizer, Jerome Edwards, and Jerome P. Phillips, New York City, of counsel, for third-party defendant.

S. H. KAUFMAN, District Judge.

Plaintiff, Group Publishers, Inc., sues Walter Winchell and The Hearst Corporation for alleged infringement of copyright, and both plaintiff and defendants move for summary judgment.

The complaint alleges that on January 7, 1947 Natamsa Publishing Company, Inc. secured a copyright on an original book entitled "The Romance of Money"; that by an instrument in writing, Natamsa assigned all its interest in said material and the copyright thereof to plaintiff; that since December 30, 1946 said book has been published by plaintiff in accordance with the copyright statute; that plaintiff is sole proprietor of all rights in the copyright and that after January 7, 1947 defendants infringed the copyright by the publication in Winchell's column in the New York Daily Mirror, a newspaper published by defendant The Hearst Corporation, and by publications elsewhere, of material copied largely from "The Romance of Money".

Copies of plaintiff's book and of the alleged infringing article in the Mirror are annexed to the complaint. From these it appears that plaintiff's publication is a printed booklet of 16 pages containing approximately 60 separate insets purporting to describe interesting episodes in the historical evolution of money as a medium of exchange, from the use of bricks of pressed tea by the early Mongolians to the present use of coins and paper. The various steps, or comments thereon, or in reference thereto, are described in very brief narrative, each in a separate inset and each accompanied by an illustration depicting the occasion described or some attending circumstance. The alleged infringing article in the Winchell column of the Mirror consisted of a column of 26 short paragraphs, none of which is illustrated. Of these 26 paragraphs, all except one or two state the same fact as appears in one or more of the insets in plaintiff's publication, though at times slightly paraphrased or coupled with brief additional comment.

Defendants' answer admits the publication and puts in issue the other material allegations of the complaint.

On defendants' motion, Eagle-Lion Films, Inc. was brought in as third-party defendant, but it is unnecessary to describe the claim alleged in the third-party plaintiffs' complaint or the third-party defendant's answer thereto inasmuch as the motions now before the court relate only to the cause of action alleged by plaintiff against defendants Winchell and The Hearst Corporation, to which the third-party defendant has not been made a party. Malkin v. Arundel Corporation, D. C., 36 F.Supp. 948, 951; Crim v. Lumbermens Mut. Casualty Co.,D.C., 26 F.Supp. 715, 720; Thompson v. Cranston, D.C., 2 F.R.D. 270; see 3 Moore's Federal Practice (2d ed.), p. 495.

The answer of the third-party defendant to the complaint of the plaintiff, after putting in issue all material allegations of the complaint except the allegation of publication, pleads as a defense that before the alleged infringement by defendants plaintiff had published its book bearing a copyright notice stating that plaintiff was the copyright proprietor, without first recording the alleged assignment to it from Natamsa;

that such publication violated the copyright laws and by reason thereof plaintiff abandoned its alleged copyright and dedicated the material in the book to the public.

The affidavit of Winchell, submitted in opposition to plaintiff's motion describes the circumstances in which the column was written and sets forth that defendants' publication was without knowledge of plaintiff's publication and in good faith.

In opposition to plaintiff's motion, the third-party defendant submits a photostat of the assignment from Natamsa to plaintiff, the accuracy and completeness of which are not disputed. This is dated May 18, 1948 and by it the assignor "hereby assigns" to plaintiff all its right, title and interest in the copyright of "The Romance of Money". A photostatic copy of the certificate of the Register of Copyrights, attesting that the assignment was received in the Copyright Office on May 20, 1948 and that a search did not disclose the recordation of any other assignment referring to said work, was also submitted and its accuracy and completeness are likewise not disputed. From these documents, it would appear that plaintiff did not acquire the copyright by assignment from Natamsa until upwards of four months after the alleged infringing publication. The assignment does not in terms confer any rights against prior infringers.

To meet this, plaintiff states, by affidavit of its president, that although the assignment recorded on May 20, 1948 was executed by Natamsa on May 18, 1948, that assignment was merely a "confirmatory" assignment, the "actual" assignment having taken place on September 11, 1947 pursuant to an agreement dated July 17, 1947 between Natamsa and plaintiff's president individually. A photostatic copy of the agreement of July 17, 1947, referred to in the affidavit, is attached thereto.

This agreement is between Natamsa and Harold E. Group (not Group Publishers, Inc., plaintiff herein), and the affidavit submitted on behalf of the third-party defendant, and not controverted, shows that plaintiff corporation did not come into existence until July 22, 1947, i. e., five days af-

ter the agreement with Mr. Group was executed. By said agreement, Natamsa sells to Harold E. Group and he purchases, the assets listed on Schedules "A" and "B", thereto annexed, "effective immediately after the publication of the August 1947 issue of Savings Bank Journal or on September 2, 1947, whichever is earlier". The agreement recites that the seller has executed a bill of sale and delivered it to Frederick W. Marquand, Esq., its attorney, in escrow; there is also a provision that the buyer contemplates the organization of a New York corporation for the purpose of taking over the assets which are the subject of the contract and that "upon notice to the seller that such corporation has been organized" the corporation shall be regarded and recognized as the buyer for all purposes under the agreement, as though originally designated as the buyer in the agreement. The agreement provides that the "transaction" shall close immediately after the publication of the August 1947 issue of the Savings Bank Journal or on September 2, 1947, whichever is earlier, at which time the bill of sale shall be delivered to the buyer. Annexed to the agreement is a copy of the bill of sale referred to, by the terms of which Natamsa grants and conveys to Harold E. Group the property listed on Schedules "A" and "B" thereto annexed, among which property is an item described "assignment of copyright for 'The Romance of Money' from Natamsa Publishing Company, Inc. to Group Publishers, Inc." Mr. Group's affidavit states that the bill of sale was delivered to him by the escriant on September 11, 1947, and this is confirmed by the affidavit of Mr. Marquand, the escriant.

The question presented by the motion is whether or not a triable issue is shown to exist with respect to (a) the copyrightability of the material in plaintiff's book; (b) whether the copyright has been infringed; (c) whether or not plaintiff was the owner of the copyright at the time of the alleged infringement; and (d) the effect of plaintiff's publication bearing a copyright notice stating that plaintiff was the copyright proprietor, prior to the recording of the assignment from Natamsa to plaintiff.

■ The copyrightability of plaintiff's work is clear. See National Institute, Inc. v. Nutt, D.C., 28 F.2d 132, 134–135, affirmed 2 Cir., 31 F.2d 236; West Publishing Co. v. Edward Thompson Co., C.C., 169 F. 833, 853–854, modified 2 Cir., 176 F. 833; Emerson v. Davies, 8 Fed.Cas. 615, 618–619, No. 4,436. However, since a determination of the last two questions presented is dispositive of this motion, only those need be discussed.

We come then to the question whether or not plaintiff owned the copyright at the time of the infringement.

The infringement occurred on or about January 2, 1948.

The assignment by Natamsa directly to plaintiff was executed on May 18, 1948, upwards of four months later.

■ Prior thereto, and on September 11, 1947, Marquand had delivered to Group the bill of sale dated July 17, 1947. This bill of sale, however, was not to be immediately effective, and did not become effective until its delivery to Mr. Group on September 11, 1947. It purported to convey to Mr. Group an assignment by Natamsa to Group Publishers, Inc. of the copyright of "The Romance of Money". Group Publishers, Inc. was not in existence on July 17, 1947, when the bill of sale was executed, but its existence was contemplated, as the agreement shows, and it did come into existence prior to the delivery of the bill of sale. The agreement pursuant to which the bill of sale was executed and delivered provides that on notice to Natamsa of the organization of the corporation it should be deemed the purchaser, with the same force and effect as if named in the agreement. When notice of the incorporation of Group Publishers, Inc. was given to Natamsa does not appear, but that seems immaterial. Though Schedule "B" annexed to the bill of sale to Mr. Group, in its description of the property to be conveyed, includes an "assignment of copyright" to plaintiff, there is no claim that any such assignment was executed prior to

the one of May 18, 1948, and until such assignment was put in writing there was no valid assignment of the copyright to plaintiff. Public Ledger Co. v. Post Printing & Publishing Co., 8 Cir., 294 F. 430; Davenport Quigley Expedition v. Century Products, D. C., 18 F.Supp. 974; § 28, Tit. 17 U.S.C.A.

■ Further, the assignment, as written and executed, does not purport to grant the assignee any right to sue for infringements antedating the assignment, and without such authorization in the assignment, no such right is conferred. Kriger v. MacFadden Publications, Inc., D. C., 43 F. Supp. 170; cf. United States v. Loughrey, 172 U.S. 206, 19 S.Ct. 153, 43 L.Ed. 420; Moore v. Marsh, 7 Wall. 515, 74 U.S. 515, 19 L.Ed. 37; see Ball, Law of Copyright and Literary Property (1944), pp. 543-4.

■ Defendants are also entitled to prevail, as a matter of law, on the ground that the substitution of the name of an assignee in a notice of copyright prior to the recordation of the assignment, results in an abandonment of the copyright and a dedication of the work to the public.

Section 19 of Title 17 U.S.C.A., prescribes the manner and form of notice required to secure the rights accorded by the statute. It declares that notice shall consist of "the word 'Copyright' or the abbreviation 'Copr.', accompanied by the name of the copyright proprietor, and if the work be a printed literary, musical, or dramatic work, the notice shall include also the year in which the copyright was secured by publication * * *".

Section 32 of Title 17 U.S.C.A., deals specifically with the substitution of the name of the assignee for that of the assignor in the prescribed notice and declares: "When an assignment of the copyright in a specified book or other work has been recorded the assignee may substitute his name for that of the assignor in the statutory notice of copyright prescribed by this title." [1]

1. The Rules and Regulations of the Copyright Office, Section 201.22(c), 17 U.S. C.A. following section 207, contain a similar provision entitled "Substitution of assignee's name.", which reads thus: "After the assignment has been duly

Strict compliance with the statutory requirements is essential to the perfection of the copyright itself and failure fully to conform to the form of notice prescribed by the act results in abandonment of the right and a dedication of one's work to the public. See Krafft v. Cohen, 3 Cir., 117 F.2d 579; Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276, 277, certiorari denied 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250; Universal Film Mfg. Co. v. Copperman, D. C., 212 F. 301, 302, affirmed 2 Cir., 218. F. 577, certiorari denied 235 U.S. 704, 35 S.Ct. 209, 59 L.Ed. 433; Wildman v. New York Times Co., D. C., 42 F.Supp. 412; Sieff v. Continental Auto Supply, D. C., 39 F.Supp. 683; Smith v. Bartlett, D. C., 18 F.Supp. 35.

The Congressional policy reflected in the statute is that the notice of copyright shall contain, as proprietor, the name of the holder of record; for indiscriminate substitution could result in considerable confusion and would not "sufficiently aid in tracing * * * title if need be." Fleischer Studios v. Ralph A. Freundlich, Inc., supra, 73 F.2d at page 277.

Plaintiff claims that the words of Section 32 are merely permissive or hortatory and do not prohibit an assignee, absent recordation, from freely substituting his name in the notice of copyright for that of the assignor. But to put this interpretation on the language of that section completely emasculates the provision and renders its inclusion within the act meaningless; for the section would serve no purpose if the assignee could, with equal force, substitute his name for that of the assignor prior to recordation.

The interpretation just given has been the considered construction of Section 32 given by authorities in the field of copyright law[2] and seems the only consistent interpretation which will give meaning to the language of the provision. Having substituted the name "Group Publishers,

recorded, the assignee may substitute his name for that of the assignor in the copyright notice on the work assigned. * * *."

Inc." in the copyright notice before recordation of the assignment of the copyright to it, plaintiff may no longer assert rights under the copyright and defendants' motion for summary judgment must be granted. See Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 33 L.Ed. 76; Record & Guide Co. v. Bromley, C. C., 175 F. 156; Amdur, Copyright Law and Practice (1936), p. 490.

Settle order on notice.

2. See Ladas, The International Protection of Literary and Artistic Property (1938), Vol. II, p. 745; Weil, American Copyright Law (1917), p. 564; Bowker, Copyright, Its History and Its Law (1912), pp. 135–136.