**Herman AXELBANK, Appellant,**

**v.**

**George RONY, The Copley Press, Inc., Hallmark Productions, Inc., Kroger Babb, Fox West Coast Theatres Corporation, National Broadcasting Company, Inc., and Does One through Twenty, Appellees.**

**No. 15916.**

United States Court of Appeals
Ninth Circuit.

April 25, 1960.

Alexander H. Schullman, Los Angeles, Cal., for appellant.

Pacht, Ross, Warne & Bernhard, Jerry Pacht, Harvey M. Grossman, Los Angeles, Cal., for appellee.

Before HAMLEY, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant sought damages and other relief against appellees for copyright infringement, unfair trade practices and unfair competition. The appellee Rony counter-claimed in damages for libel. The district court entered its judgment denying all relief sought by appellant and awarded appellee Rony damages in the amount of $500 on his counter-claim.

Jurisdiction of the district court was based upon Title 28 U.S.C.A. § 1338, and Title 17 U.S.C.A. § 1 et seq. This court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294.

██ Under well established appellate procedure we must view the evidence in the light most favorable to the prevailing party.

Appellant Herman Axelbank, a resident of New York, devoted many years of his life to the accumulation of news-reel and documentary films pertaining to the Russian Revolution of 1917. He succeeded in acquiring, during the period of 1917–1930, probably the most complete documentary film library in the United States relating to the Russian Revolution. With the help of Max Eastman as commentator, he eventually completed in 1937 a seven reel film entitled "Tsar to Lenin". All of the film was of actual historical events photographed by on-the-scene cameramen. The film was copyrighted in March of 1937 by a distributing company which had contracted with receivers of the film who had been appointed by a New York state court,[1] and through various mesne conveyances the copyright on the film was obtained by the appellant in 1952.[2]

Appellee George Rony was born in and lived in Russia until 1929 and was present in Russia during the 1917 Revolution. After the Revolution he worked in the Russian film industry under the aegis of the Soviet Government, and acquired vast quantities of Russian documentary films for his own use.

Rony's films, like appellant's, are compilations of news-reel shots and documentary photographs of Russian historical events. They, like appellant's films, are not staged or performed by professional actors, but are actual photographs of the events which they portray. They were assembled over the years while Rony lived in Russia, Germany and France prior to coming to the United States in 1940. At that time Rony had the largest private library of Russian documentary films in Europe. Both men worked independently on the accumulation, compilation and editing of news-reel films pertaining to the Russian Revolution, one in Europe and one in the United States.

On the occasion of the death of Stalin in 1953, Rony licensed certain portions of his film collection to the National Broadcasting Company for a television show on March 8, 1953. Other portions were made available to Hallmark Productions through their president, Kroger Babb, and by Hallmark compiled into the motion picture "Halfway to Hell". This film was exhibited by Fox West Coast Theatres Corporation. Additionally, Rony assembled in 1955 for exhibition in a television series over Station KCOP Los Angeles certain of his films in a weekly series entitled "Background to Battle". Rony himself, as well as a collector of authentic films, is an authority on the Russian Revolution and frequently uses portions of his collection to illustrate lectures which he gives on the subject. It is undisputed that in each of the uses of segments of Rony's films there appears identical footage to that contained in appellant's copyrighted film "Tsar to Lenin", and hence all such persons were joined as defendants in appellant's complaint for copyright in-

1. The appointment of receivers in the original state court action was only the first step in a long series of lawsuits brought by and against appellant which cover a span of thirty years, and which have been litigated in both state and federal courts. The motivation of all this litigation is apparently appellant's desire for exclusive rights to all Russian historical films.

2. Although there was considerable dispute at the trial whether appellant actually owned the copyright in issue (i. e., whether he was the real party in interest), or whether appellant had abandoned any such copyright under the doctrine of Group Publishers v. Winchell, D.C.S.D. N.Y.1949, 86 F.Supp. 573, we do not reach this point and assume for purposes of this appeal that appellant is the legal owner of the copyright on the film "Tsar to Lenin".

fringement.[3] The complaint also sought damages from all appellees because of unfair competition in the misappropriation and use of appellant's copyrighted film. All such relief was denied by the trial court.

On September 5, 1955, appellant wrote to the television station KCOP suggesting that Rony had pirated the film "Tsar to Lenin", and this letter formed the basis of Rony's counter-claim for libel for which the court awarded $500 in damages.

On this appeal appellant relies on the same claims that were asserted in the district court. He designates eighteen errors of the trial court in failing to grant relief for copyright infringement and for unfair competition, and in giving appellee Rony any relief on the counter-claim for libel. The issues in this case were mainly ones of fact, and accepting the trial court's findings, as we must unless they are clearly erroneous, Overman v. Loesser, 9 Cir., 1953, 205 F.2d 521, the legal questions become relatively simple.

Turning to the first issue of copyright infringement, the analysis must first be to determine exactly what the copyright covers, and then to see if there has been an infringement thereof. Motion pictures are subject to copyright protection under 17 U.S.C.A. § 5, and we assume arguendo that appellant has fully complied with all the procedural formalities.

Despite appellant's claim that most of his footage was in the form of original negatives, and hence not in the public domain, this was rejected by the trial court. There was an express finding that the documentary films which were used in both "Tsar to Lenin" and appellees' films were freely marketed in the 1920's and 1930's when both men were amassing their collections and thus they were in the public domain. Hence, the source of the films of both Axelbank and Rony was the public domain.

Of course, just because the source of the material is in the public domain does not void the copyright, but rather the protection is limited to the new and original contribution of the author. American Code Co. v. Bensinger, 2 Cir., 1922, 282 F. 829, 834. In this case the novel elements subject to copyright protection were the sequential development, the commentary of Max Eastman, and one map for which appellant claims credit. Since these are the only elements of "Tsar to Lenin" which merit copyright protection, we must analyze Rony's films to see if any one of the protectible parts of appellant's film is found therein to determine whether the copyright of appellant has been infringed.[4] Since the issue of copyright infringement is one of fact, this appeal cannot prevail on this issue unless the finding of no infringement is "clearly erroneous". Overman v. Loesser, supra.[5]

There was no evidence of any sort which indicated that Rony had access at any time to appellant's film, and it was undisputed that Rony first saw "Tsar to Lenin" after the commencement of this action. In addition to this direct proof

---

3. The mere fact of identity of scenes and content proves nothing; for copyright law, unlike patent law, recogn'zes individual artistic achievement of a similar end product, provided there has been no copying of another's end product.

4. Of course, even though the source of the material in appellant's film was the public domain, this would not permit Rony to directly copy appellant's film. Rony could use a copy of the original news-reel films which were part of the public domain, but he could not copy appellant's copy thereof. "Others are free to copy the original. They are not free to copy the copy." Bleistein v. Donaldson Lithographing Co., 1903, 188 U.S. 239, 249, 23 S.Ct. 298, 299, 47 L.Ed. 460. The trial court found, however, that the films were collected by independent efforts.

5. The test to be applied—that of "The Ordinary Observer"—is discussed by Judge Yankwich in "Legal Protection of Ideas—A Judge's Approach", 43 Va.L. Rev. 375 (1957), and many cases using the test are discussed.

of no copying, however, the trial court also found lack of similarity between the protectible parts of appellant's film and the films of Rony claimed to infringe. We have examined the entire record on this appeal, and in our view this finding is more than amply supported.

First, there was no claim made that Rony utilized the sequential development employed by appellant. Secondly, there was no assertion that Rony employed any of the dialogue of Max Eastman used by the appellant in his film. Finally, while there was a claim that one particular map in "Tsar to Lenin" was also used by Rony, it is well settled that maps as such are entitled to limited copyright protection, Amsterdam v. Triangle Publications, 3 Cir., 1951, 189 F.2d 104, Marken and Bielfeld, Inc. v. Baughman Co., D.C.E.D.Va.1957, 162 F.Supp. 561, and we are unable to say as a matter of law that the appellant's map involved such a high degree of creation that *even if* copied by Rony it constituted an infringement of appellant's copyright. Hence the trial court did not err in concluding that there was no infringement by appellees of the appellant's copyrighted film, "Tsar to Lenin".

■■ We turn next to the assertion of appellant that even if appellees did not infringe on his copyrighted film, they competed unfairly with him under the doctrine of the I.N.S. Case.[6]

This argument, however, misses the whole point of that much discussed case. The gist of that case is that appropriation of another's work product, even if that work product be uncopyrightable, can nevertheless be a form of unfair competition with the original creator of that product. To constitute unfair competition under the circumstances of this case, it is essential that there be present an appropriation of another's product—the so-called "free ride" doctrine. In the case at bar there was no appropriation by Rony of appellant's uncopyrightable matter, because both men worked independently to amass Russian documentary films. Hence, the trial court did not err in determining that there was no unfair competition by appellees.

■ Finally, we turn to the question of libel. The trial court found that the letter was libelous per se, and that it was maliciously motivated. The evidence was uncontradicted that as a direct result of the receipt of such letter by television station KCOP, the television series supplied by Rony, "Background to Battle", was cancelled.

The letter on its face suggests that Rony was untruthful, that he received stolen property, and that he intentionally misappropriated literary property belonging to the appellant. Under California law, Bates v. Campbell, 1931, 213 Cal. 438, 2 P.2d 383; Jimeno v. Commonwealth Home Builders, 1920, 47 Cal. App. 660, 191 P. 64, it is clear that the appellant's letter constitutes libel per se. Moreover, the letter was not privileged because the trial court found that it was motivated by malice. Under California law, Civil Code Section 47(3), malice would destroy any privilege that might exist. Hence, the trial court did not err in awarding damages to Rony because of appellant's defamatory letter.

The judgment of the district court is affirmed.

6. International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L. Ed. 211.