Milton H. CARTER, Plaintiff,

v.

HAWAII TRANSPORTATION CO., doing business as Gray Line-Hilo, Defendant and Third-Party Plaintiff,

and John Doe, Defendant,

v.

A. D. STARR, INC., Third-Party Defendant and Fourth-Party Plaintiff,

v.

James PORTER, individually and doing business as The Porter Press, Fourth-Party Defendant.

Civ. No. 1865.

United States District Court
D. Hawaii.

Dec. 29, 1961.

Hughes & Alexander, by John F. Alexander, Honolulu, Hawaii, for plaintiff.

Carlsmith, Carlsmith, Wichman & Case, by H. William Burgess, Honolulu, Hawaii, for Hawaii Transportation Co.

Lewis, Buck & Saunders, Honolulu, Hawaii, of counsel, by Paul Devens, Honolulu, Hawaii, for third-party defendant, and fourth-party plaintiff.

James Porter was never served.

TAVARES, District Judge.

This is an action brought by Milton H. Carter, hereinafter called Carter, against Hawaii Transportation Co., doing business as Gray Line-Hilo, hereinafter called Gray Line, for alleged infringement of the alleged copyright of a map belonging to Carter. Gray Line brought in A. D. Starr, Inc., hereinafter called Starr, as third-party defendant and Starr attempted to bring in James Porter, individually and doing business as The Porter Press, hereinafter called Porter, as fourth-party defendant but was unable to do so because Porter was outside the jurisdiction of this Court.

In 1959, Gray Line employed Starr, as a public relations organization, to arrange to be printed a brochure advertising Gray Line's sight-seeing services on the island of Hawaii. Included in the material to be printed was a map of the island of Hawaii. Starr employed Porter to print the brochure. Porter did so but, without the knowledge of, or authorization from, either Gray Line or Starr, copied Carter's said map and printed it in the brochure without the knowledge or consent of Carter. For a very short time the brochures were distributed throughout the Hawaiian Islands and possibly on the mainland when Carter discovered that his map had been copied therein, whereupon he called the matter to the attention of Gray Line which, within two weeks thereafter, recalled all copies of the brochure which could be recovered and destroyed them. Carter claims damages for the alleged copying and printing of his allegedly copyrighted map.

There is no question that Carter's map was copied by Porter in the brochure.

It was copied practically in its entirety; Carter's map and the map printed in the brochure differ only in the following respects: Carter's map specifies the Hotel Hukilau, the brochure does not; Carter's map specifies the Kona Steak House, the brochure map does not; the brochure map specifies the King Kamehameha Hotel, Carter's map does not; and Carter's map specifies the birthplace of Kamehameha I, the brochure map specifies the birthplace of Kamehameha.

■ ■ The Court's initial sentiment is one of sympathy with Carter, notwithstanding the lack of knowledge and intent on the part of Starr and Gray Line. Were Carter's map copyrightable and covered at the material times by a valid copyright, the Court would not hesitate to award such damages, if any, as might be found to have resulted from the infringement, or a satisfactory minimum award, because infringement does not depend upon intent; it depends upon the fact of copying copyrighted matter. Towle v. Ross (1940), D.C., Or., 32 F. Supp. 125, 127. However, in this connection, the Court must observe that both Gray Line and Starr were negligent and did not exercise due and ordinary business care by checking the brochure after it was printed to determine whether the original specifications had been complied with. Had this been done, both Gray Line and Starr would have discovered that a map other than the one specified had been included in the brochure and could have prevented its dissemination. Hence, their original lack of knowledge and intent, if it had any ameliorating effect, is largely offset by their failure to check the brochure after printing. Though it is not a valid excuse, the reason given by both Gray Line and Starr for such omission is that Gray Line was in a hurry for the brochure because it was needed for a mainland conference by a certain date and Gray Line requested the printer to send a number of copies direct to the mainland for such use. As between Carter and Gray Line, therefore, if Carter's map were copyrightable and covered by a valid copyright at the time

of the copying, the Court would be inclined to award to Carter both damages and reasonable attorney's fees. As between Gray Line and Starr, the Court cannot accept Starr's contention that it was a mere agent and as such is not liable to Gray Line because of the latter's alleged negligence in not checking the printed brochure. Contributory negligence is not a defense to a breach of contract. 17 C.J.S. Contracts § 525, p. 1149. Starr contracted with Gray Line to produce a brochure according to certain specifications laid down by Gray Line. Those specifications were not followed. It was Starr's obligation to see that such specifications were followed, and according to the usages of the trade, to make sure that the material incorporated in the brochure was not covered by valid copyrights of others or, if so covered, that its use was properly authorized by the copyright holders. The fact that at Gray Line's request some copies were sent directly to the mainland and others direct to Gray Line's offices does not excuse Starr because it was fully able to have gotten at least one copy and checked it, which might have avoided the alleged infringement.

Be these things as they may, it is the opinion of the Court that the copyright which Carter contends was infringed, and which was infringed if such copyright was valid, was not valid.

A map is copyrightable. 17 U.S.C. § 5 (f). Carter complied with the provisions of 17 U.S.C. §§ 10, 13 and 19, which set out the procedure to be followed in obtaining a copyright. Carter's map consists of an outline of the island of Hawaii and words within and without the outline indicating places, areas, names of cities and names of hotels and describing the activities and points of interest at various places on the island.

■ The outline of the island of Hawaii is in the public domain and is not copyrightable. Christianson v. West Pub. Co. (1945), 9th Cir., 149 F.2d 202, 203; Sawyer v. Crowell Pub. Co. (1942), D.C., N.Y., 46 F.Supp. 471, 474; 17 U.S. C. § 8. The names of areas, of cities and of hotels also are in the public domain and therefore are not copyrightable.

■ Maps are entitled to only limited copyright protection. Axelbank v. Rony (1960), 9th Cir., 277 F.2d 314, 318.

The case of Marken and Bielfield, Incorporated v. Baughman Company (1957), D.C., Va., 162 F.Supp. 561, involved a map contained in a folder or brochure. The Court, at pages 562 and 563, summed up the rules applicable to the copyrightability of maps as follows:

"The controlling principles were applied in General Drafting Co. v. Andrews, 2 Cir., 1930, 37 F.2d 54; Andrews v. Guenther Publishing Co., D.C.1932, 60 F.2d 555; Amsterdam v. Triangle Publications, Inc., 3 Cir., 1951, 189 F.2d 104; and Crocker v. General Drafting Co., D.C.1943, 50 F.Supp. 634. These appear to be leading cases upon the subject of the amount of originality required to meet the test as to whether the map is a proper subject of copyright. While it is not required that the compilation be the sole product of the maker, it is clear that something more than the compilation of information procured by others is required to make a map copyrightable. There must be originality resulting from the independent effort of the maker in acquiring a reasonably substantial portion of the information. It follows that of necessity the facts of each case differ."

In Hirsch v. Paramount Pictures, Inc. (1937), D.C., Cal., 17 F.Supp. 816, 818, the Court said:

"It is true that infringement may result from copying a work which is based upon material in the public domain. But this happens only when the material so taken has been transformed by the first taker or borrower as to entitle him to a claim of originality."

It cannot be doubted that the information contained in Carter's map concerning the activities and points of inter-

est at various places on the island is all within the public domain in that such information is available to everyone. In an endeavor to show originality and independent work by himself, Carter testified in substance that he had lived many years on the island of Hawaii and had worked for a newspaper there, which work required his doing a great deal of travelling around the island, resulting in his getting to know the island very well. He stated that he had hiked, hunted, fished, camped, etc., around the island and knew it well and that he had at one time assisted in some surveying there but apparently not connected with map making on his part.

■ Carter contends that his naming of certain places on the island was original with him and that not only was his describing of the activities and points of interest at various places on the island original with him but that the manner in which he did so was original with him.

Some years prior to 1955, the Hawaii Tourist Bureau, which subsequently was renamed the Hawaii Visitors Bureau, published a map of the island of Hawaii, naming places of interest on the island. In 1955, the Hawaii Visitors Bureau published a map of that island, naming places of interest there. Neither of these maps was copyrighted. Carter's map was published in 1956. Attached hereto is a chart setting out various designations used on the three maps. It is at once apparent that if the names used by Carter can be termed original, the originality is so slight that it could not possibly be the basis of a valid copyright. Andrews v. Guenther Publishing Co. (1932), D.C., N.Y., 60 F.2d 555, 557.

Carter has set out in his map eight descriptions of the activities and points of interest at various places on the island. They are all of the same type. For example:

"Resorts, vacationists, happy people * * * remains of old Hawaii, Capt. Cook's monument, heiaus, ceremonial grounds * * * cruises, sport fishing * * * cof-

fee, cattle, farms, 'kona nightingales' * * * sunset splendor * * * roadsides in bloom."

■ As was said, supra, concerning the various designations used, if the descriptions can be termed original, and if the form of the descriptions can be termed original, the originality is so slight that it could not possibly be the basis of a valid copyright. Furthermore, the Court is of the opinion that such type of designation and such type of description are not within the contemplation of the statutes permitting copyright and that they are not copyrightable, even if original. As was said in Axelbank v. Rony (1960), 9th Cir., 277 F.2d 314, at page 318:

"Finally, while there was a claim that one particular map in 'Tsar to Lenin' was also used by Rony, it is well settled that maps as such are entitled to limited copyright protection * * * and we are unable to say as a matter of law that the appellant's map involved such a high degree of creation that *even if* copied by Rony it constituted an infringement of appellant's copyright."

The Court therefore holds that Carter's map was not copyrightable and that there could be no infringement of his alleged copyright.

Even if the Court were to hold that Carter's allegedly infringed map was copyrightable and that it was validly copyrighted, he abandoned the copyright. In 1959 Carter published a guide pamphlet containing a substantially similar map with a notice of copyright on the cover as follows: "Copyright 1959, Wikiwiki Publishers P. O. Box 8221, Honolulu 15, Hawaii." He took no further steps to copyright such pamphlet.

In Group Publishers, Inc. v. Winchell (1949), D.C., N.Y., 86 F.Supp. 573, at page 577, the Court said:

"Strict compliance with the statutory requirements is essential to the perfection of the copyright itself and failure fully to conform to the

form of notice prescribed by the act results in abandonment of the right and a dedication of one's work to the public. * * *

"The Congressional policy reflected in the statute is that the notice of copyright shall contain, as proprietor, the name of the holder of record; for indiscriminate substitution could result in considerable confusion and would not 'sufficiently aid in tracing * * * title if need be.'"

██ If the owner of a copyright publishes the copyrighted material with a defective notice of copyright, he abandons his copyright and dedicates the material to the public. Wildman v. New York Times Co. (1941), D.C., N.Y., 42 F.Supp. 412, 414; Sieff v. Continental Auto Supply, Inc. (1941), D.C., Minn., 39 F.Supp. 683, 686; Smith v. Bartlett (1937), D.C., Maine, 18 F.Supp. 35, 37. By so publishing the latter map, Carter abandoned his copyright and dedicated the map to the public. There is no evidence that a valid, registered assignment of the allegedly infringed copyright was made by Carter to Wikiwiki Publishers prior to the latter publication; therefore, the notice does not contain the name of the proprietor of record and it would not "sufficiently aid in tracing * * * title if need be."

These rulings make it unnecessary to rule on the other points involved.

Therefore, although the Court feels strongly sympathetic to Carter for the pirating of his map by Porter, albeit without any intent of Gray Line and Starr, the Court can find no basis for awarding any judgment in favor of Carter, for the reasons stated. Consequently, the Court hereby renders judgment in favor of all of the defendants who are parties to this action and awards them their costs. The Court does not believe that the circumstances of this case justify an award of an attorney's fee to any party and the Court therefore hereby denies such award.

Counsel for defendant parties will prepare an appropriate form of judgment.

| HAWAII TOURIST BUREAU | HAWAII VISITORS BUREAU | PLAINTIFF |
|---|---|---|
| KAU LAVA DESERT | KAU DESERT | HISTORIC KAU DESERT |
|  |  | KAU |
| SUGAR |  | SUGAR |
| HAWAII NATIONAL PARK | HAWAII NATIONAL PARK | HAWAII NATIONAL PARK |
| FERN JUNGLE | TREE FERNS | PARK FLORA |
|  |  | PUNA |
| VOLCANO HOUSE | VOLCANO HOUSE | KILAUEA VOLCANO HOUSE |
| BLACK SAND BEACH | BLACK SAND BEACH | KALAPANA BLACK SAND BEACH |
|  | CATTLE | CATTLE |
| HOTEL | HOTELS | NANILOA HOTEL HOTEL HUKILAU |
|  | HILO BAY | HILO BAY |

| HAWAII TOURIST BUREAU | HAWAII VISITORS BUREAU | PLAINTIFF |
|---|---|---|
| AKAKA FALLS | AKAKA FALLS | SCENIC FALLS |
| SUGAR | SUGAR CANE | SUGAR |
| LAUPAHOEHOE | LAUPAHOEHOE VILLAGE | LAUPAHOEHOE |
| HAMAKUA COAST | HAMAKUA COAST | HAMAKUA |
| WAIPIO VALLEY | WAIPIO VALLEY | WAIPIO VALLEY |
| OPOLU PT. | OPOLU PT. | |
| KOHALA | | KOHALA |
| KOHALA MTS. | KOHALA MTS. | |
| HAWI | HAWI | HAWI |
| BIRTHPLACE OF KAMEHAMEHA I | FIRST STATUE OF KING KAMEHAMEHA I | BIRTHPLACE OF KAMEHAMEHA I |
| MAHUKONA | MAHUKONA LANDING | MAHUKONA |
| KAMUELA | KAMUELA AIRPORT | KAMUELA |
| PARKER RANCH | PARKER RANCH | PARKER RANCH |
| | CATTLE | CATTLE |
| | KAWAIHAE LANDING | KAWAIHAE BEACH |
| KONA | | KONA |
| GAME FISHING | FISHING GROUNDS | FAMOUS FISHING GROUNDS |
| KONA INN | HOTELS | KONA STEAK HOUSE WAIAKA LODGE KONA INN KONA PALMS |
| COFFEE PLANTATIONS | COFFEE | COFFEE |
| CAPT. COOK'S MONUMENT | CAPTAIN COOK'S MONUMENT | CAPT. COOK'S MONUMENT |
| HONAUNAU CITY OF REFUGE | HONAUNAU CITY OF REFUGE | CITY OF REFUGE |
| ISLAND OF HAWAII | ISLAND OF HAWAII | HAWAII THE ORCHID ISLE |