Robert H. MOORE and Timothy M. Reed, d/b/a "Savannah's Sights and Sounds", Plaintiffs,

v.

LIGHTHOUSE PUBLISHING COMPANY, INC., Defendant.

Civ. A. No. CV476–266.

United States District Court,
S. D. Georgia,
Savannah Division.

April 5, 1977.

Robert E. Falligant, Jr., Richard C. Metz, Falligant, Sims & Hunter, Savannah, Ga., for plaintiffs.

Willis J. Richardson, Jr., Savannah, Ga., for defendant.

OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

LAWRENCE, District Judge.

I

This action is brought for infringement of copyright pursuant to 28 U.S.C. § 1338(a). Plaintiffs seek injunctive relief and damages, claiming substantial similarity and identicality between its guide map of Savannah and the allegedly infringing map of Lighthouse Publishing Company.

The defendant has filed a motion for summary judgment based on the pleadings, exhibits and an affidavit in which the commercial art student who prepared defendant's map of Savannah and environs stated that it was his "sole creation" based on independent, artistic efforts, and was not a copy or reproduction, substantially or otherwise, of any pre-existing drawing or map.

The motion was orally argued and briefs submitted in December, 1976. In lieu of ruling on the motion, evidentiary hearings were held on December 28, 1976 and January 11, 1977. Both sides agree that the evidence developed is complete and that it is sufficient for a decision. Before this Court is defendant's motion for summary judgment and the matter of relief by way of grant of a preliminary injunction against infringement.

The genesis of this litigation appears to be the surge of tourism that Savannah has enjoyed in recent years. On or about March 1, 1975, plaintiffs published the first issue of "Savannah's Sights & Sounds." A pocket-size tourist guide about twenty pages in length, the publication features advertisements of restaurants, lounges, nightclubs, gift and craft shops, scenic tours, banks, a calendar of events, directory and short articles or comments with emphasis on Savannah's historic past.

"Sights & Sounds" features an illustrated map (with accompanying legend) depicting the older section of Savannah and the city's environs. It is intended as an aid to tourists and conventioneers in finding their way to points of interest in and around town and to business establishments among plaintiffs' clientele. The map is a double page affair. See copy attached to this Opinion. The map shows the streets and squares in Old Savannah with certain landmark buildings, structures and places in the city and its vicinity. They include forts, resorts and major highways. Buildings are

depicted by small line drawings which identify the particular building or place of interest. Plaintiff's monthly publication is distributed free at various business locations.

Each number of "Sights & Sounds" has been copyrighted. Notice of the copyright is contained in the guide with a statement forbidding "publication or copying of material herein without express permission of the publishers." The map itself is not copyrighted individually.[1]

Prior to the publication of the first issue of "Sights & Sounds" Timothy M. Reed and Robert H. Moore consulted Sophia White who is the proprietor of Ladyprint Shop which specializes in the graphic arts. An architect, Mark Lindsey, had prepared a map for her which she testified was "designed to get people in and out of Savannah." It was copyrighted by Ladyprint in 1973 as a pictorial illustration rather than as a map. The publishers of "Savannah's Sights & Sounds" sought permission to use it. Miss White testified in that respect:

"Mr. Reed and Mr. Moore came in in 1974 and asked permission to use our map. They had a copy of the reproduction in hand. I looked at them and smiled and said you can't afford it. I had published tourist guides for two or three years and knew some of the needs. Our map was developed for the purpose of getting people in and out of Savannah. I suggested that Ladyprint approach Mark with the idea that a map similar to this one or with certain changes could be sold to Sights & Sounds so that the artist and Ladyprint could receive compensation. And, we set a price contingent on the artist's approval. I approached Mark and gave him the changes. He said it will be as easy to draw another one. I gave it to Sights & Sounds and received compensa-

tion for it. Ladyprint received compensation for the use and in turn paid the artist." A total of $250 was paid by "Sights & Sounds."

II

The first issue of "The Savannahian" appeared in October, 1976. In format it is similar to "Sights & Sounds" but is longer in content because of inclusion of articles on various topics contributed by local writers. "The Savannahian" carries a two page, ready reference map of the historic area of Savannah and the environs. As in the case of the "Sights & Sounds" map, certain outlying areas of the city are greatly compressed. Defendant's map was prepared by a commercial art student. He reiterated in his testimony that the map was his "sole creation" and was not a copy of any prior drawing or map. He said that he did not have to look at the buildings in order to draw the symbolic representations of landmarks that appear on his version. There are a number of duplications and near duplications in the two maps. The line drawings of buildings etc. are quite similar in method and appearance to those in "Sights & Sounds."

Attached to this Opinion [see Appendix] are the "Sights & Sounds" map, the "The Savannahian" map and the one prepared for and copyrighted by Ladyprint Shop. Plaintiffs say that defendant's map is a copy of the "Sights & Sounds" map and endeavored to prove that proposition by adjusting or reducing them to the same scale and using overlays. The common errors in both maps are enumerated in an affidavit by Timothy M. Reed, one of the plaintiffs. The inaccuracies referred to eliminate, plaintiffs contend, any possibility of coincidence in the way of independent

---

1. A copyright of a publication as a whole protects all copyrightable contents, including maps, 18 C.J.S. Copyright and Literary Property § 93; *Rexnord, Inc. v. Modern Handling Systems, Inc.,* 379 F.Supp. 1190, 1195 (D., Del.); *Hedeman Products Corp. v. Tap-Rite Products Corp.,* 228 F.Supp. 630, 633 (D., N.J.).

effort by defendant's cartographer. They are as follows:

(1) Abercorn Expressway at Oasis Village does not go over I–95 as shown on both maps. It goes under I–95;

(2) Dean Forest Road does not go under I–16 as shown on both maps. It goes over I–16;

(3) I–16 does not go over I–95 as shown on both maps. It goes under I–95;

(4) Jefferson Street does not run west of the Civic Center as is shown on both maps. It deadends into the Civic Center parking lot;

(5) Both artists left the street immediately to the east of Jefferson Street blank. It should be labeled "Tattnall Street". (This was corrected on the map appearing in the issue of defendant's publication for December, 1976).

Three of these inaccuracies appear on the Ladyprint map. The other two have their source in the "Sights & Sounds" map which was prepared by the same architect. The Ladyprint version is, in conception and execution, similar to both the "Sights & Sounds" and defendant's maps. The main difference I perceive is that in the Ladyprint map the squares and streets are drawn to a smaller scale and the cartographer did not use drawings of any historic buildings located between the south side of Bay Street and Forsyth Park. Had he added the same drawings found in the "Sights & Sounds" version representative of Christ, St. John's and Independent Presbyterian Churches, St. John's Cathedral, the Davenport House, the Forsyth Park Fountain, the Civic Center and several other landmarks, the Ladyprint map would have been markedly similar to the two maps that are the subject of this litigation.

### III

██ (1) The certificate of registration of a copyright is prima facie evidence of its validity. *Flick-Reedy Corporation v. Hydro-Line Manufacturing Company*, 351 F.2d 546 (7th Cir.), cert. den., 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301; *Tennessee Fabricating Company v. Moultrie Manufacturing Company*, 421 F.2d 279 (5th Cir.), cert. den., 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91. Where the holder of a copyright has made a strong prima facie case of copying by proof of access and similarity, the burden of going forward shifts to the defendant to negative the probability of copying. *Blumcraft of Pittsburgh v. Newman Brothers, Inc.*, 373 F.2d 905 (6th Cir.). It is not overcome by mere denial of infringement. *Champion Map Corporation v. Twin Printing Company*, D.C., 350 F.Supp. 1332.

██ (2) Maps may be copyrighted. 17 U.S.C. § 5(f). It has been said, however, that they are entitled to limited protection only. *Carter v. Hawaii Transportation Co.*, 201 F.Supp. 301 (D.Hawaii); *Axelbank v. Rony*, 277 F.2d 314, 318 (9th Cir.). To be copyrightable, the map must be the product of a "modicum" of original work. *Andrews v. Guenther Pub. Co.*, 60 F.2d 555 (S.D., N.Y.); *Amsterdam v. Triangle Publications, Inc.*, 189 F.2d 104 (3rd Cir.); 18 Am.Jur.2d Copyright and Literary Property § 47, p. 342. Novelty has also been held to be a requirement. *Hayden v. Chalfant Press, Inc.*, 177 F.Supp. 303, 305 (S.D., Cal.), aff'd, 281 F.2d 543 (9th Cir.).[2]

2. The Report of the House Judiciary Committee on the Copyrights Act of 1976 (which becomes effective next January 1st) states concerning Section 102 of the new statute:

"The two fundamental criteria of copyright protection—originality and fixation in tangible form—are restated in the first sentence of this cornerstone provision. The phrase 'original works of authorship', which is purposely left undefined, is intended to incorporate without change the standard of originality established by the courts under the present copyright statute. This standard does not include requirements of novelty, ingenuity, or esthetic merit, and there is no intention to enlarge the standard of copyright protection to require them."

1976 *U.S. Code Congressional and Administrative News*, p. 5664.

■ The test of originality is one of low threshold. "In order to be copyrightable, a work must contain at least a certain minimum amount of authorship in the form of original literary, artistic or musical expression." See Copyright Office Circular 32. The purpose and policy as to the low standard of originality has been thus articulated: "The objective is to progress first and, if necessary, litigate the question of infringement later." Dissenting opinion of Judge Meskill in *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 494 (2nd Cir.), cert. den., 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135.

■ (3) While a design need possess only a minimum amount of artistic merit and creativity, a mere trivial variation does not satisfy the minimal requirements of the statute. *Tennessee Fabricating Company v. Moultrie Manufacturing Company, supra*, 421 F.2d 279–282;[3] *L. Batlin & Son, Inc. v. Snyder, supra*, 536 F.2d 490.

■ (4) The originality must result from the independent efforts of the mapmaker to acquire a reasonably substantial portion of information. *Alaska Map Service Inc. v. Roberts*, 368 F.Supp. 578 (D.Alaska); *Amsterdam v. Triangle Publications, Inc., supra*. Creativity as well as originality is necessary. *Newton v. Voris*, 364 F.Supp. 562, 564 (D.Oregon); *County of Ventura v. Blackburn*, 362 F.2d 515 (9th Cir.). But the requirement that a map must be sufficiently original and creative to be copyrightable does not mean a higher degree of originality than is demanded in the case of other works. *C.S. Hammond & Co. v. International College Globe, Inc.*, 210 F.Supp. 206 (S.D., N.Y.). It is said that only "a minimal amount of creativity is

necessary to support a copyright". *Jacobs v. Robitaille*, 406 F.Supp. 1145, 1150 (D.N.H.); 1 Nimmer, *The Law of Copyright* § 10.2 at 36. However, another case suggests that "a high degree of creativity" in mapmaking is required. See *Axelbank v. Rony, supra*, 277 F.2d 318. The fact that "the source of the material for the map is in the public domain does not void the copyright but is subject to the requirement of originality and creativity". *County of Ventura v. Blackburn, supra*, 362 F.2d 520. See also *Carter v. Hawaii Transportation Co., supra*, 201 F.Supp. 303 holding that an outline of the Island of Hawaii and places of interest is in the public domain.

"The manner of selection and arrangement of materials by a mapmaker may show sufficient originality and creativity to entitle the map to copyright protection, especially where the cartographer's final map possesses an individual appearance and style." 18 Am.Jur.2d § 46 (Supplement); "Copyright—Maps and Charts", 4 A.L.R. Fed. 466, 475.

■ (5) Infringement may exist if a material and substantial part of a map is copied even though it represents only a small portion of the whole. *Towle v. Ross*, 32 F.Supp. 125, 127 (D.Or.). Uncontrovertible similarity between a copyrighted and alleged infringing map is sufficient to establish infringement without proof of access or actual copying. *Champion Map Corporation v. Twin Printing Company et al.*, 350 F.Supp. 1332 (E.D., N.C.).

One emerges from this jungle of generality, contradiction and uncertainty with the impression that the only thing certain in this area of law is the lack of it. To under-

---

**3.** In the *Tennessee Fabricating Company* case, the Fifth Circuit quoted the statement of Justice Holmes in *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250, 23 S.Ct. 298, 47 L.Ed. 460 that "It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits." To the same effect, see Whicher, "Originality, Cartography and Copyright", 38 *New York University Law Review* (April, 1963), 280, 296. The article is a vigorous criticism of the judicial gloss placed on the statute in respect to the requirements of originality, creativity and novelty.

state things, "The cases are somewhat confusing on questions of infringement of a copyrighted map by a subsequent cartographer." [4] 18 Am.Jur.2d Copyright and Literary Property § 118. To this state has evolved the simple grant of power to the Congress under Article I, § 8, cl. 8 of the federal Constitution" "To promote the Progress . . . of useful Arts, by securing for limited Times to Authors . . the exclusive Right to their . . . Writings." [5]

## IV

The streets, squares and various historic landmarks in "Old Savannah" cannot be exclusively appropriated. Nor can one acquire an exclusive right to identify by symbolic drawings buildings, forts and points of interest. Even if there be a modicum of art in the drawings involved here, the necessary originality and creativity is lacking. To be sure, no one has a right to slavishly copy a copyrighted map. Such is not authorship. 1 Nimmer, *The Law of Copyright* § 6 at 10.2. However, two mapmakers setting out independently to depict in elementary, miniature form a landmark normally will end up with a similar result.

 The device of contracting or distorting an outlying geographical area so as to juxtapose it with the particular area featured on the map is not copyrightable. See *Marken and Bielfeld, Incorporated v. Baughman Company*, 162 F.Supp. 561 (E.D., Va.). Copyright protects the expression of the idea, not the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630.

 Returning to the Ladyprint map, as we have seen, permission was sought by Timothy Reed to use it. The owner of the copyright refused. However, Miss White put Mr. Reed in touch with the architect-artist who had drawn the map for Ladyprint. A total of $200 was paid by "Sights & Sounds". In preparing the guide map for the latter he drew heavily upon his Ladyprint production. In concept and in execution the map and the one copyrighted by "Sights & Sounds" are quite similar. The principal difference in the former is the rough representations of various landmarks and structures in one part of the downtown area of Savannah. They were added to the version prepared by the author for "Sights & Sounds". Had they been originally inserted, the two maps would be similar in appearance and detail.

"Absent copying there can be no infringement of copyright." *Mazer v. Stein, supra*, 347 U.S. at 218, 74 S.Ct. at 471. Neither infringement nor validity can be properly decided unless the Ladyprint map is taken into account. The three maps possess marked similarity in respect to the highway systems to the west of Savannah. The treatment was clearly borrowed by the cartographer from the map he previously prepared for Ladyprint. I discern no originality or creativity in the layout of the highways west of the city.

The unique plan of streets and squares in downtown Savannah is a physical fact. So

---

4. The state of copyright law in this country brings to mind the remark of the President of the Probate, Divorce, and Admiralty Division in A. P. Herbert's celebrated case of *Marrowfat v. Marrowfat*. Relative to English gaming laws, his Lordship observed: "This department of the law is a labyrinth of which Parliament and the Courts may well be proud." Herbert, *Uncommon Law* (London, 1974 ed.), p. 95.

5. "These terms have not been construed in their narrow literal sense but, rather, with the reach necessary to reflect the broad scope of constitutional principles. While an 'author' may be viewed as an individual who writes an original composition, the term, in its constitutional sense, has been construed to mean an 'originator', 'he to whom anything owes its origin'. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 [4 S.Ct. 279, 281, 28 L.Ed. 349] (1884)." See *Goldstein v. California*, 412 U.S. 546, 561, 93 S.Ct. 2303, 2312, 37 L.Ed.2d 163.

are the churches, houses, forts, etc. in and near the city. They belong to the public domain. If plaintiffs are correct that the highly simplified representations on their map containing drawings of that type used to depict certain landmarks and structures are copyrightable, no one can publish, except at peril, a guide map in which that device is used.

Plaintiffs presented evidence to show direct copying. The proof took the form of overlays of the two maps in controversy. When the "Sights & Sounds" map is reduced 67% in size and overlaid on defendant's the two coincide. In another exhibit defendant's map was increased in scale by 153%. Laid over plaintiff's map, a like result is observed. If this demonstrates copying, infringement does not necessarily follow. There must first be a valid copyright. The similarities do not demand a finding of copying. Defendant's cartographer did not need to copy plaintiff's map. The drawing on the cover of the first issue of "The Savannahian" which he prepared indicates artistic capability. Numerous differences exist in the two maps. That of the defendant and its accompanying legend is largely oriented to showing customers of advertisers in "The Savannahian" how to get to their places of business in and around the city, including River Street which is an area not featured on the "Sights & Sounds" version.

Plaintiffs are without standing to claim an infringement based on Ladyprint's copyright. They are in the ambivalent position of asserting that the defendant has infringed on what they themselves took from a work copyrighted by a third party. Originality justifying a copyright means that the work must owe its creation to the author "and this in turn means that the work must not consist of actual copying". *Batlin & Son, Inc. v. Snyder, supra,* 536 F.2d 490.

## ORDER

Whether or not a copyright has been infringed may present a question of fact. 6 *Moore's Federal Practice* (Pt. 2) § 56.17[14], pp. 793ff.; *Axelbank v. Rony, supra,* 277 F.2d 317. I have found, as a matter of law, that neither an infringement nor a valid copyright exists. Whether variations are trivial or not is, I think, a matter for the court and not for a jury. See *Tennessee Fabricating Company, supra,* 421 F.2d 282.[6]

The motion for summary judgment of Lighthouse Publishing Company is granted. If the matter were merely before this Court on the question of the injunction, such relief would have to be denied under the facts as I find them and under what this Court conceives to be the applicable law.[7]

The complaint is dismissed.

Appendix to follow.

---

6. I earlier noted that the Supreme Court has denied the application for certiorari in *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 490. Among the questions raised by the applicant was: "May federal courts assess artistic merit of work to determine if it has sufficient originality to be copyrightable?" See 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135.

7. To entitle a party to a preliminary injunction there must be a showing of reasonable proba-

bility of eventual success and that plaintiff will not be irreparably injured should such relief not be granted. Rule 65 F.R.C.P.; *Allison v. Froehlke,* 470 F.2d 1123 (5th Cir.); *Blackshear Residents Organization v. Romney,* 472 F.2d 1197 (5th Cir.); *American Radio Association v. Mobile Steamship Association, Inc.,* 483 F.2d 1 (5th Cir.).

APPENDIX

MAP COPYRIGHTED BY SAVANNAH'S SIGHTS AND SOUNDS (1975)

UNITED STATES DISTRICT COURT
Case No. CV476 268
Plaintiff's Ex. No.
Ident. 4/4/79
Evid.

**RIVER STREET**

1. O'Leary's
2. Harborside
3. The Shrimp Factory
4. Basket Place
5. Kid Stuff
6. Wally's Place
7. Exchange Tavern
8. The Ships Wheel
9. Night Flight
10. Sweetfield Leather Co
11. Washed Ashore
12. Hearns Lounge
13. River Street Bazaar
14. Handcraft Hut
15. Mulberry Tree
16. Lilly Pulitzer
17. West End Station

**GREATER SAVANNAH**

1 Scenic Tours of Historic Savannah
2 Pink House
3 The Pirate's House Restaurant & Gift Shop
4 Savannah Art Association
5 Historic Savannah Foundation Tours
6 Avis Rent-A-Car, The Downtowner Motor Inn, Regency Restaurant
7 Burt's Old Place, The Ramada Inn
8 Mud Pie Gallery, LTD
9 C & S Bank
10 Crystal Beer Parlor
11 Johnnie Ganem Restaurant & Lounge
12 Gottlieb's Delicatessen & Bakery
13 The Rex Epicurean Restaurant
14 Gildea's Restaurant & Lounge
15 Johnny Harris Restaurant
16 Avis Rent-A-Car, National Car Rental
17 Coastal Beverage Company
18 The Best Western Motel, The Gallery
19 Savannah Inn & Country Club
20 Ambos Seafood Co.
21 Funky Foliage
22 Poteryland
23 Front Porch
24 Looking Glass
25 Tassey's Pier
26 Rice Tree

MAP COPYRIGHTED BY LIGHTHOUSE PUBLISHING COMPANY, INC. (1976)

MAP COPYRIGHTED BY LADYPRINT, INCORPORATED (1973)