### AMSTERDAM v. TRIANGLE PUBLICATIONS, Inc.

#### Civ. A. No. 8422.

United States District Court
E. D. Pennsylvania.
Sept. 25, 1950.

Joseph G. Denny, Jr., of Philadelphia, Pa., for plaintiff.

Harold E. Kohn, of Paxson, Kalish, Dilworth & Green, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is a civil action to recover damages for the infringement of a copyright of a map and for counsel fees. On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact.

1. The plaintiff is Lewis L. Amsterdam, trading as the Franklin Survey Co., a citizen and resident of Pennsylvania.

2. The defendant is Triangle Publications, Inc., a corporation which is doing business in Philadelphia, Pennsylvania.

3. This action is brought under the Copyright Act of March 4, 1909, c. 320, § 1 et seq., 35 Stat. 1075, as amended, 17 U.S. C.A. § 1 et seq.

4. The plaintiff is a publisher of maps.

5. The defendant is the publisher of The Philadelphia Inquirer (hereinafter called Inquirer), a daily newspaper.

6. In 1932 the plaintiff published a map 32 1/2″ x 26 3/4″ entitled "Map of Delaware County, Pa."

7. In 1932 this map was entered with the Registrar of Copyrights, Washington, D. C.

8. The plaintiff complied with all requirements for registration of this map. On December 5, 1932 a copyright, Class F, No. 5259, was issued to the Franklin Survey Co.

9. The plaintiff retains all right, title and interest in and to this copyright.

10. To make this map, the plaintiff studied every map of Delaware County that he could find.

11. Neither the plaintiff nor anyone on his behalf made any actual surveys or investigations of any roads, county lines, township lines, creeks, rivers or railroad lines. All this information was obtained from other maps in the plaintiff's possession or in the possession of the township and municipal authorities.

12. The state highway route numbers were obtained from the State Highway Department.

13. With the exception of the names of a few very small secondary roads, which were obtained from the real estate developers,[1] all information shown on the plaintiff's map came from maps already in existence, although none of this information had been published previously on any one map.

14. The plaintiff spent considerable time and effort to assemble and prepare this information for publication but did very little, if any, original work.

15. On January 13, 1946 the defendant published a map 19 1/2″ x 12 1/4″ entitled "Map of Delaware County". This map was published on the front page of the Everybody's Weekly section of the Sunday Inquirer.

16. The defendant's map was one of a series of historical maps and accompanying articles relating to the four counties ad-

---

[1] It took the defendant the better part of two hours to find the names of 25 streets that appeared on both the plaintiff's map and the defendant's map but did not appear on any of the maps the defendant produced in Court. The plaintiff could not recall whether these street names had appeared on the official maps of the townships in question, which maps he had used to gather information for his map.

joining Philadelphia County—Bucks, Chester, Delaware and Montgomery Counties. This map was published solely as part of that issue of the Inquirer, and has never been published or sold as a separate map.

17. To make its map, the defendant photographed the plaintiff's map knowing that the plaintiff's map was registered under the Copyright Act, and used this photograph as its base map.

18. The defendant deleted from the plaintiff's map the street plans of the City of Chester, the Boro of Media and Upper Darby Township. The defendant also omitted the legend of markings used by the plaintiff, the census and statistics of Delaware County, the index to unincorporated places and the index to golf and country clubs.

19. The defendant added a picture of St. David's Church, Radnor, Pennsylvania, a scroll containing the title of the map, deep blue circles containing numbers from 1 to 20 to indicate various historic sites along with an accompanying legend.

20. The coloring and emphasis on the defendant's map are different from those on the plaintiff's map in the following respects:

(a) The principal roads are a bright red on the defendant's map and a pale yellow on the plaintiff's map;

(b) The creeks and rivers are a deep blue on the defendant's map and a pale blue or thin black lines on the plaintiff's map; and

(c) The townships and boros are subordinated on the defendant's map but are greatly accentuated on the plaintiff's map.

21. The plaintiff's map is a detailed road map of Delaware County which emphasizes the various townships and boros. The defendant's map emphasizes equally the principal roads and waterways in Delaware County and the twenty historical sites; its map de-emphasizes the townships, boros and minor roads.

22. The information shown on each map, without regard to coloring or emphasis, is identical.

23. The defendant's map is a photographic copy of the plaintiff's map.

24. The plaintiff had 5000 copies of his map printed with notice of the copyright thereon.

25. The plaintiff sells his map for $1 per copy. Since 1940 the plaintiff has sold very few, if any, of these maps.

26. The plaintiff charges $1 to $5 for the privilege of reproducing a copyrighted map in small numbers. Since 1940 the plaintiff has permitted few, if any, such reproductions.

27. The defendant printed 1,167,500 copies of the January 13, 1946 issue of the Inquirer, which included a like number of copies of its map.

28. The defendant sold 1,149,471 copies of that issue of the Inquirer for an average price of $.0835 per copy. The total net revenue received from such sales, over and above the total expenses for that issue, was $63,686.90.

29. That issue of the Inquirer contained 112 pages. There is no way of allocating a proportion of the net revenue to each page.

30. On its map the defendant gave the plaintiff the following credit line: "Base Map © Franklin Survey Co."

31. This credit line appeared on all copies of the defendant's map except less than 1%. It had been inadvertently omitted from the rotary press cylinders that printed the maps. Although proof readers immediately discovered that this credit line was missing, 200 to 10,000 copies had been printed before the presses were stopped. Thereafter, all copies of the defendant's map carried this credit line.

32. The plaintiff waited twenty-seven months before filing this suit for copyright infringement.

33. This delay did prejudice the defendant in that a key witness for the defendant died one month before the trial of this case.

34. This delay was not unreasonable.

35. The defendant did not prove that the plaintiff, or any of his agents had given the defendant permission to reproduce the plaintiff's map of Delaware County. There-

fore, the plaintiff did not consent to such reproduction.

## Discussion.

The only facts that I think necessitate comment are Facts 10 to 14, inclusive.

The issue raised by these facts is whether the plaintiff did sufficient original work to entitle his map to copyright protection.

■ To be copyrightable a map must be the result of some original work. Andrews v. Guenther Pub. Co., D.C., 60 F.2d 555, 557; General Drafting Co., Inc. v. Andrews et al., 2 Cir., 37 F.2d 54, 56; 34 Am.Jur. 454-455; 18 C.J.S., Copyright and Literary Property, § 116, p. 233.

The actual original work of surveying, calculating and investigating that was done by the plaintiff in order to make his map was so negligible that it may be discounted entirely.

What the plaintiff did was to study the United States Geological Survey Maps, the Pennsylvania Department of Highways Maps, the maps prepared and owned by the various townships and municipalities, and all other maps which he could find. Primarily, he studied the maps published by governmental authorities. He then prepared, from the information shown on these maps, a large map of Delaware County. From this large map, he next designed and published the small map involved in this case.

To make his map, the plaintiff had to determine only what information he was going to use from other maps, the emphasis to be given to that information and the coloring scheme and symbols he was going to use. When he finished, his map by comparison was a new map that contained some information that was not on any one of his base maps but was collectively on all of these maps.

Is this exercise of judgment and discretion by the plaintiff the type of original work that is intended to be protected by the Copyright Act? I think not.

■ The location of county lines, township lines and municipal lines is information within the public domain, and is not

copyrightable. Christianson v. West Pub. Co., 9 Cir., 149 F.2d 202, 203; Sawyer v. Crowell Pub. Co., D.C., 46 F.Supp. 471, 474. Likewise, information in government publications is within the public domain and not subject to copyright. Andrews v. Guenther Pub. Co., supra. Nor can the plaintiff copyright the arbitrary color schemes, symbols or numbers that he uses on his map. Christianson v. West Pub. Co., D.C., 53 F. Supp. 454, 455.

All that remains is the plaintiff's method of presenting this information. The presentation of ideas in the form of books, movies, music and other similar creative work is protected by the Copyright Act. However, the presentation of information available to everybody, such as is found on maps, is protected only when the publisher of the map in question obtains originally some of that information by the sweat of his own brow. Almost anybody could combine the information from several maps onto one map, but not everybody can go out and get that information originally and then transcribe it into a map.

The plaintiff's reputation as a qualified map maker cannot make copyrightable maps for him. He, or his agents, must first do some original work, get more than an infinitesimal amount of original information. With no reflection whatsoever upon the plaintiff's ability as a map maker or upon other maps published and copyrighted by the plaintiff, it seems to me that the plaintiff's map entitled "Map of Delaware County, Pa." is, for lack of original work, not subject to copyright.

## Conclusions of Law.

1. This Court has jurisdiction of this case.

■ 2. The plaintiff's map entitled "Map of Delaware County, Pa." is not subject to copyright for lack of original work.

3. The defendant's map entitled "Map of Delaware County" does not infringe on any copyright held by the plaintiff.

4. Judgment is hereby entered for the defendant.

5. Each side shall bear its own costs.