UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Sylvester HAMILTON,
Defendant-Appellant.

No. 77–1230.

United States Court of Appeals,
Ninth Circuit.

Oct. 5, 1978.

Dan E. Dennis, Asst. U. S. Atty., Boise, Idaho, on brief, for plaintiff-appellee.

Before KILKENNY, SNEED, and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

The defendant in this criminal case admitted making and selling precise reproductions of a map bearing a copyright. The sole issue on appeal is whether the map that the defendant copied was of such originality that its copyright was valid. That inquiry requires us to decide a question of copyright law not addressed by previous decisions in this circuit.

The defendant, Edward S. Hamilton, was charged with two counts of knowing and willful infringement of a copyright in violation of 17 U.S.C. § 104.[1] The district court, sitting without a jury, found the defendant guilty and imposed a $700 fine. We find, as did the district court, that the copyright is valid; and the conviction is affirmed.

The maps involved in this case show the boundaries, roads, terrain, features, and improved areas of Ada County, Idaho. KDB Enterprises, a company which specializes in making maps of the Pacific Northwest and which holds about ninety copyrights for various maps, produced a map of Ada County, Idaho in 1970 and obtained copyright for it. KDB then produced a second map of Ada County in 1973 and received a certificate of copyright covering the new matter included on that map. The defendant here was charged with infringing the 1973 copyright by reproducing this second map, and all that is before us is the validity of the copyright for the map of later date.

Hamilton's principal contention, both here and in the trial court, has been that KDB's 1973 map lacks the quality of originality requisite for obtaining a copy-

E. Don Copple, Boise, Idaho, on brief, for defendant-appellant.

1. The alleged copyright infringement took place prior to the January 1, 1978 effective date of the 1976 General Revision of Copyright Law. 17 U.S.C. § 101 *et seq.* (1976).

right because it was merely a synthesis of information already depicted on maps in the public domain. The 1973 map did show terrain features which had been physically located by a KDB employee and which did not appear on any preexisting map. But a contribution which is more than merely trivial is required in order to satisfy the originality requirement of the Constitution and the copyright statutes, *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102–03 (2d Cir. 1951),[2] and the defendant claims KDB's terrain investigations were so minimal that the 1973 map is not an original work. On the record before us it is a close question whether the extent of the geographic investigation done by KDB was so substantial that, considered alone, it can support the map copyright. We therefore find it necessary to decide whether the map maker's selection, arrangement, and presentation of terrain features which were already either in the public domain or subject to separate copyright (that KDB had a right to use) may be considered as part of the efforts and skill which constitute a cartographer's authorship.

The Third Circuit has held that a map which represents a new combination of information already in the public domain lacks any element worthy of copyright protection. *Amsterdam v. Triangle Publications*, 93 F.Supp. 79 (E.D.Pa.1950), *aff'd on opinion below*, 189 F.2d 104 (3rd Cir. 1951). The *Amsterdam* court stated that a map may not be put under copyright unless "the publisher of the map in question obtains originally some of that information by the sweat of his own brow." 93 F.Supp. at 82. Thus, under the *Amsterdam* rule, as applied to this case, only those portions of the map recorded as a result of direct observation of terrain features would support the copyright.

At least three times this court has considered map copyright cases in which the correctness of the *Amsterdam* rule was a potential issue, but we resolved each of those cases on other grounds. *County of Ventura v. Blackburn*, 362 F.2d 515 (9th Cir. 1966); *Hayden v. Chalfant Press, Inc.*, 281 F.2d 543 (9th Cir. 1960). *Trowler v. Phillips*, 260 F.2d 924 (9th Cir. 1958). *See also Axelbank v. Rony*, 277 F.2d 314, 318 (9th Cir. 1960).[3] The so-called direct observation rule of *Amsterdam* is squarely before us here, and we decline to follow it.

*Amsterdam* and perhaps the copyright cases from this circuit cited above suggest that we should insist upon a standard of originality that is more demanding in cases respecting maps than with other works subject to copyright. If this approach reflects a concern that cartographers might be excluded entirely from using valuable maps in the public domain because a private party has a previous copyright on a map which utilizes the public domain information, the fear, of course, is a false one; for the fact that one person studies other works so as to produce from those elements a new work with sufficient originality to obtain a copyright does not prevent a different author from making independent use of his own skills and efforts to do precisely the same thing. In this respect, the danger of removing a whole subject area from the public realm of experimentation and design does not exist, as it does under the patent laws, which permit the owner of a valid patent to exclude others from infringement even if they created the object or device solely by efforts of their own.

*Amsterdam* appears to rest on the judgment that the only facet of cartography

---

2. To be eligible for copyright protection, a work must display some element of originality. This requirement has been inferred from the constitutional provision that Congress may pass legislation "securing . . . to Authors" temporally limited but exclusive rights in their works. U.S.Const. art. I, § 8, cl. 8. *See, e. g., Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57–61, 4 S.Ct. 279, 28 L.Ed. 349 (1884).

3. Some of the district courts of this circuit have followed *Amsterdam*. *See Alaska Map Service, Inc. v. Roberts*, 368 F.Supp. 578, 579 (D.Alaska 1973); *Hayden v. Chalfant Press, Inc.*, 177 F.Supp. 303, 306 (S.D.Cal.1959), *aff'd on other grounds*, 281 F.2d 543 (9th Cir. 1960). Professor Nimmer, noting these cases, has criticized the *Amsterdam* rule, *see* M. Nimmer, Nimmer on Copyright § 2.08[A][3], at 2–77 to 2–81 (1978).

that can result in an original product, the only feature of the art worth protecting, results from direct observation. However, we are unable to find a persuasive reason for adopting this premise, and we therefore decline to rule that maps present considerations that are distinct from all other copyright cases. Expression in cartography is not so different from other artistic forms seeking to touch upon external realities that unique rules are needed to judge whether the authorship is original. Recording by direct observation is only one measure of a cartographer's skill and talent, and originality should not be made synonymous with a requirement that features of a copyrighted map be observed and recorded directly before they will be entitled to copyright protection. For this reason, we think the *Amsterdam* rule is theoretically unsound. We are aware that under the conventional standards for determining originality a cartographer occasionally may have some difficulty proving that his map is an original compilation rather than a mere imitation. But this problem of proof does not justify failing to protect the many cartographers whose claims of original work can be established. Not protecting the product of creative compilation or synthesis would discourage progress in the field of cartography much more than the difficulty in a few cases of proving originality under the conventional standards.

■ Also, we think that the *Amsterdam* rule is not very helpful for determining claims of originality in any particular case. It is not significantly easier to establish originality by proof of direct observation than by proof of compilation and synthesis. The *Amsterdam* test itself requires a very difficult and sensitive factual judgment where all but a small part of the information on the map already appeared on a public domain map, or on some other copyrighted map. For while one may copyright a map by independently resurveying an area, even though the result of that work

might be identical to a map already in the public domain,[4] a map maker who merely visits landmarks shown on a public domain map and notes that their location is correctly depicted might not receive copyright protection. *Amsterdam* and its progeny provide little guidance for distinguishing between slavish imitation and independent creation, no matter if the cartographer has physically observed known features of the terrain.

■■ Originality requires only that the work display "something irreducible, which is one man's alone," *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 250, 23 S.Ct. 298, 300, 47 L.Ed. 460 (1903), not that the work be novel in comparison with the works of others. *Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99, 103 (2d Cir. 1951). When a work displays a significant element of compilation, that element is protectible even though the individual components of the work may not be, for originality may be found in taking the commonplace and making it into a new combination or arrangement. *See Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1109–10 (9th Cir. 1970); *Axelbank v. Rony,* 277 F.2d 314, 317 (9th Cir. 1960); *Universal Pictures Co. v. Harold Lloyd Corp.,* 162 F.2d 354, 363 (9th Cir. 1947); *Leon v. Pacific Telephone & Telegraph Co.,* 91 F.2d 484, 485–86 (9th Cir. 1937). Trivial elements of compilation and arrangement, of course, are not copyrightable since they fall below the threshold of originality. For example, it is well-settled that copyright of a map does not give the author an exclusive right to the coloring, symbols, and key used in delineating boundaries of and locations within the territory depicted. *Perris v. Hexamer,* 99 U.S. (9 Otto) 674, 675–76, 25 L.Ed. 308 (1878); *Christianson v. West Publishing Co.,* 149 F.2d 202, 203–04 (9th Cir. 1945).

■ That maps have sufficient originality to support a copyright has been recog-

---

4. This follows from the elementary principle that a work which results from the independent efforts of its author is copyrightable even though an identical work is already in the pub-

lic domain. *See Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (2d Cir. 1936), aff'd, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940).

nized since the first copyright statute, enacted in 1790, provided coverage for "maps, charts, and books." 1 Stat. 124 (1790). The early cases recognized that "[t]he elements of the copyright [in a map] consist in the selection, arrangement, and presentation of the component parts." *General Drafting Co. v. Andrews*, 37 F.2d 54, 55 (2d Cir. 1930). *See Emerson v. Davies*, 8 Fed.Cas. 615, 619 (Cir.Ct.D.Mass.1845) (Story, J.). We rule that elements of compilation which amount to more than a matter of trivial selection may, either alone or when taken into consideration with direct observation, support a finding that a map is sufficiently original to merit copyright protection. Beginning with the Supreme Court's decision in *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884), the courts have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectible elements of a photographer's work. *See, e. g., Time, Inc. v. Bernard Geis Associates*, 293 F.Supp. 130, 141–43 (S.D.N.Y.1968). Similar attention to rewarding the cartographer's art requires us to recognize that the elements of authorship embodied in a map consist not only of the depiction of a previously undiscovered landmark or the correction or improvement of scale or placement, but also in selection, design, and synthesis.[5]

 The record below establishes that there are elements both of synthesis from public sources and independent observation in the efforts used to create the 1973 map, and we find that, taken together, they support the validity of the 1973 copyright.

KDB used an Idaho Department of Highways map as the principal base in preparing the 1973 map. It relied upon the 1970 KDB map for some data added to the base. Substantial portions of the roads, landmarks, and features depicted on the 1973 KDB map also appear on maps published by United States Geological Survey, United States Forest Service, and the Bureau of Land Management. We think that the compilation that produced the 1973 map was a result of substantial creative efforts, and we weigh it heavily in support of the finding that the 1973 map was an original work.

In addition to the compilation and synthesis from the other maps, which were put in evidence, the court also found that "a significant portion" of the information on the 1973 KDB map, including rifle ranges, landing strips, motorcycle and jeep trails, landmarks, and names of subdivisions came from other sources. It is clear from the record that at least some of this information was derived from personal observations of a KDB employee who checked the motorcycle trails and other landmarks by ground and aerial observations. The parties differ as to whether the sources of the added information were in the public domain or were from direct observations of the KDB employees, but in our view of the matter that is irrelevant since synthesis can be an element of originality. The new information, when taken into account with the compilation and synthesis from the maps that were introduced in evidence, makes the 1973 map an original one that is subject to copyright. We conclude that the 1973 KDB map was an original product of significant efforts expended by those skilled in the cartographer's art. The copyright was valid. This being the only issue raised by Hamilton on appeal, his conviction must be affirmed.

---

**5.** We emphasize that compilations or new arrangements of material which represent merely trivial additions to or omissions from a preexisting map will not support a copyright absent some additional original work. For example, copying the outline of the United States and the boundaries of each state cannot be said to involve any element of original choice or arrangement. *Christianson v. West Publishing Co.*, 149 F.2d 202 (9th Cir. 1945). Similarly, the selection of principal cities of North America partly from memory and partly from census reports is "far from constituting such originality as to form a basis for copyright." *Andrews v. Guenther Publishing Co.*, 60 F.2d 555, 557 (S.D.N.Y.1932).