**Robert W. ALLEN, individually and d/b/a National Academic Games Project, Plaintiff–Appellant,**

v.

**ACADEMIC GAMES LEAGUE OF AMERICA, INC., a corporation, R. Lawrence Liss, an individual, Neal Golden, an individual, James Davis, an individual, Stuart E. White, an individual, Jean Skomra, an individual, and Does 1 through 25, Defendants–Appellees.**

No. 94–56593.

United States Court of Appeals, Ninth Circuit.

Submitted April 9, 1996.*

Decided July 12, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App.P. 34(a) and 9th Cir.R. 34–4.

Donald G. Norris and Debra K. Butler, Burton & Norris, Pasadena, California, for plaintiff-appellant.

Charles H. Carpenter, Glendale, California, for defendants-appellees James Davis and Stuart White.

Joseph R. Zamora, Liebman, Reiner & Walsh, Los Angeles, California, for defendant-appellee Neal Golden.

Before: SCHROEDER and LEAVY, Circuit Judges, and TRIMBLE,** District Judge.

TRIMBLE, District Judge:

Due to a controversy over the use of academic games in a tournament setting, Robert W. Allen (Allen) individually and d/b/a National Academic Games Project (NAGP) filed suit against Academic Games Leagues of America, Inc., R. Lawrence Liss, Neal Golden, James Davis, Stuart E. White, and Jean Skomra (collectively referred to as AGLOA) alleging copyright, trademark, and tradename infringement. AGLOA filed a motion for summary judgment against Allen's claims for copyright infringement. The district court granted the motion and Allen timely appealed.

## I. FACTS

Since the 1960's, Robert W. Allen has been involved in the development of academic games, including the games at issue in this appeal, A MAN CALLED MR. PRESIDENT,[1] EURO–CARD or WORLD CARD,[2] linguiSHTIK,[3] and PROPAGANDA.[4] Allen has been employed in various capacities for schools and school districts for the purpose of integrating the subject games, as well as other academic games, into classroom settings and student competitions. For several years, middle and high school level students from six states have participated in national tournaments that Allen conducted under the name of National Academic Games Project (NAGP), a sole proprietorship of Allen. The highest number of students attending a NAGP tournament was 900 in the mid 1980's and approximately 800 students attended the tournament in 1991.

In 1992, a non-profit corporation, Academic Games League of America (AGLOA) was formed to conduct a national tournament that used some of Allen's academic games as a culmination to local and regional student competitions that also used the subject games during the school year. Prior to forming AGLOA, the individual respondents had significant roles in the NAGP national tournaments for many years. However, while each of the individual respondents was principally involved in AGLOA activities, Allen was not included. In fact, AGLOA was formed due to a personality conflict that developed between Allen and the individual respondents and because of disagreements on how to conduct and develop the national tournament.

---

** The Honorable James T. Trimble, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

1. A game testing facts about American Presidents and copyrighted by Allen in 1970.

2. A game testing history and current events and copyrighted by Allen in 1967.

3. A game testing grammar and sentence structure and copyrighted by Allen in 1991.

4. A game introducing players to propaganda techniques used by politicians and related agencies. The district court found that Allen failed to establish legal ownership of a copyright for this game.

Beginning in April, 1992, AGLOA conducted annual tournaments that coincided with Allen's NAGP national tournament. The tournaments occurred at the same time because of a need to wait for the completion of local and regional competitions and to accommodate the activities of graduating high school seniors. The subject games used at the AGLOA tournaments were purchased and brought to the tournaments by the participating students and schools. To date, three AGLOA tournaments have been conducted involving approximately 500 students, in 1992, to 900 students, in 1994.

At each AGLOA tournament, the subject games were played under rulebooks developed by an AGLOA committee that continuously revised the rules to enable students to play each game under tournament conditions while enhancing student educational value and interest in the games. Tournament rulebooks used at NAGP tournaments were not copyrighted by Allen and were actually developed and revised by a committee of persons that consisted primarily of the individual respondents. While each of the subject games contains a game manual, AGLOA tournament rulebooks do not repeat the rules found in the game manuals, but refer to the rules and elaborate on how each game is to be played in a tournament setting.

Allen derives income from the sale of each of the subject academic games. AGLOA buys games from Allen to sell directly to participating schools at cost and does not copy any of Allen's copyrighted materials in their tournaments. The only players in AGLOA's leagues are students. Allen has never objected to the playing or use of his academic games by students, who have played Allen's games in regional leagues for over twenty years.

## II. DISCUSSION

### A. Public Performance

■ The Copyright Act of 1976 confers upon copyright holders the exclusive right to perform and authorize others to perform their copyrighted works publicly. *See* 17 U.S.C. § 106(4). "Perform" and "publicly" are defined in the Copyright Act as, respectively, "to recite, render, play, dance, or act it, either directly or by means of any device or progress ..." and "to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered...." 17 U.S.C. § 101. In applying these statutory definitions to the playing of Allen's games in a tournament setting, we conclude that the playing of a game is not a "performance" within the meaning of the Copyright Act.

Allen maintains that the language of Section 106(4) precludes AGLOA from conducting their national tournament because it constitutes a public performance of his protected literary works, the subject copyrighted games. Allen contends that a purchaser of a board game only obtains the right to play the board game in settings that are not "public" because playing or performing the games publicly is a right held exclusively by the copyright holder under § 106(4). However, the interpretation of "play," as used to define "perform" in § 101 of the Copyright Act, has generally been limited to instances of playing music or records. *See Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*, 855 F.Supp. 1314, 1321 (D.Mass.1994); *Hickory Grove Music v. Andrew Andrews*, 749 F.Supp. 1031, 1036 (D.Mont.1990), *but cf. Red Baron–Franklin Park, Inc. v. Taito Corp.*, 883 F.2d 275, 278–79 (4th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 952 (1990), (holding that a video arcade owner's use of copyrighted circuit boards in coin-operated video machines available to the public for a fee constituted public performance of the copyrighted work under § 106(4)). The term "play" has not been extended to the playing of games. To do so would mean interpreting the Copyright Act in a manner that would allow the owner of a copyright in a game to control when and where purchasers of games may play the games and this court will not place such an undue restraint on consumers.

Whether privately in one's home or publicly in a park, it is understood that games are meant to be "played." In this situation, the games are being played by students who come together for the purpose of friendly,

academic competition. There is no indication that this nonprofit corporation, AGLOA, and the individual respondents are making the subject games available to the public for a fee. The students, schools, and school districts use their own games, purchased from Allen, in the tournaments, and respondents are merely organizers of this event. Moreover, AGLOA's tournaments are limited to students who participated in regional competitions which also involved the playing of Allen's games.

■ Even if the playing of games could constitute a performance, we would have to recognize the applicability of the fair use doctrine under Section 107 of the Copyright Act. This section allows the fair use of a copyrighted work in such instances as for nonprofit educational purposes and where the effect of the use upon the potential market for or value of the protected work is limited. As indicated above, AGLOA tournaments are held not for profit, but for encouraging education among young students. The potential market for the subject games has in all likelihood increased because participants of the AGLOA tournament have had to purchase Allen's games. Analysis of other factors involved in § 107 leads this court to conclude that the application of the fair use doctrine in this case is clearly appropriate.

B. Derivative Works & The Merger Doctrine

■ Section 106(2) of the Copyright Act reserves for copyright holders the exclusive right to prepare derivative works. A "derivative work" is defined in § 101 as "a work based upon one or more preexisting works, such as a translation ... or any other form in which a work may be recast, transformed, or adapted. A work consisting of ... modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" The district court found and both parties agree that the NAGP tournament rulebooks were not copyrighted. However, because Allen's game manuals to the subject games have been copyrighted, the issue concerning the AGLOA tournament rulebooks is whether they are "derivative works" of Allen's game manuals.

Allen asserts that to constitute a derivative work, the infringing work need only incorporate in some form a portion of the copyrighted material. This court, however, has consistently held that to prove infringement, one must demonstrate substantial similarity between the works. *Litchfield v. Spielberg,* 736 F.2d 1352, 1355 (9th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). Although the district court found that some of the rules discussed in the AGLOA rulebooks were also found in Allen's game manuals, this court is not convinced that it is even necessary to consider whether the AGLOA rulebooks in fact constituted "derivative works" under the Copyright Act.

■ A copyright only protects a particular expression of an idea and not the idea itself *Mazer v. Stein,* 347 U.S. 201, 218, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954). Thus, ideas contained in a copyrighted work may be freely used so long as the copyrighted expression is not wholly appropriated. This is often the case with factual works where an idea contained in an expression cannot be communicated in a wide variety of ways. *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir. 1984), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Consequently, the notions of idea and expression may merge from such "stock" concepts that even verbatim reproduction of a factual work may not constitute infringement. *Accord See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1163 (9th Cir.1977); *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 901 (9th Cir.1987).

■ This doctrine of merger is particularly applicable with respect to games "since they consist of abstract rules and play ideas." *Midway Mfg. Co. v. Bandai–America, Inc.,* 546 F.Supp. 125, 148 (D.N.J.1982); *see also Anti–Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 300 n. 1. (9th Cir.1979). A similar logic has been applied to rules of a contest where most subsequent expressions of an idea of a rule are likely to appear similar to the words of a related rule. *See Morrissey v. Procter & Gamble Co.,* 379 F.2d

675, 678–79 (1st Cir.1967); *Affiliated Hospital Products, Inc. v. Merdel Game Mfg. Co.,* 513 F.2d 1183, 1188–89 (2nd Cir.1975). Here, Allen has not shown that it is possible to distinguish the expression of the rules of his game manuals from the idea of the rules themselves. Thus, the doctrine of merger applies and although Allen may be entitled to copyright protection for the physical form of his games, he is not afforded protection for the premises or ideas underlying those games. To hold otherwise would give Allen a monopoly on such commonplace ideas as a simple rule on how youngsters should play their games.

For the foregoing reasons, the decision appealed from is AFFIRMED.