**TIFFANY DESIGN, INC., a Nevada corporation, and Grant Gresser, an individual, Plaintiffs,**

v.

**RENO–TAHOE SPECIALTY, INC., a Nevada corporation, and John Does 1–20 and Roe Corporations 1–20, Defendants.**

No. CV–S–98–1207–PMP (RLH).

United States District Court, D. Nevada.

July 12, 1999.

---

Michael J. McCue, Quirk & Tratos, Las Vegas, NV, for plaintiffs.

Leland Eugene Backus, John L. Krieger, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Currently before this Court is Plaintiffs Tiffany Design, Inc.'s and Grant Gresser's Motion for Partial Summary Judgment (Doc. # 58) filed on April 23, 1999. An Opposition (Doc. # 70) was filed on May 19, 1999, by Defendant Reno–Tahoe Specialty, Inc. Plaintiffs filed a Reply (Doc. # 79) on May 28, 1999.

## I. INTRODUCTION

The cityscape of Las Vegas, Nevada, is known throughout the world for its neon-lit hotels and casinos. Before this Court today is a copyright infringement suit alleging the unauthorized copying of postcard and graphic art depictions of this desert metropolis.

## II. FACTS

Plaintiff Tiffany Design, Inc., is a Nevada corporation owned by Plaintiff Grant Gresser. Tiffany Design is engaged in the production and wholesale distribution of videos, calenders, posters, postcards and other novelty items to vendors in and around Las Vegas. (*See* Gresser Decl. ¶ 2, attached as Doc. # 70.) Defendant Reno–Tahoe Specialty, Inc., produces similar products for sale throughout the State of Nevada.

At various times between 1994 and 1998, Gresser hired David Phillips of David Phillips Photographers, Inc., to take aerial photographs of the area commonly known

as the "Las Vegas Strip."[1] Gresser then hired graphic artist Robert Burton of R. Burton & Associates to use these photographs and others taken by Gresser himself to create an artistic depiction of the Strip and its surrounding environs. By means of a computer photographic enhancement program known as Photoshop, Burton was able to complete this depiction ("the 1998 Image") on or about January 10, 1998. (*See* Gresser Decl., Ex. A.) The 1998 Image featured a number of enhancements or changes, including the addition of illumination, the modification of the size of certain hotels and casinos, and the addition or subtraction of colors. (*See* Burton Decl. ¶ 3, attached as Doc. # 59.)

A number of affirmations and documents were executed in an attempt to convey the ownership rights in the 1998 Image to Plaintiffs. First, on March 13, 1998, Phillips executed a letter releasing "all copyrights attached to the Las Vegas poster [the 1998 Image] to Grant Gresser of Tiffany Design." (*See* Letter from Phillips to Gresser of 3/13/98, attached as Ex. D of Gresser Decl.) Next, in March 1998, Gresser obtained a federal copyright registration for the 1998 Image. On November 20, 1998, Phillips executed a declaration by which he confirmed that his March 13, 1998 letter memorialized an agreement by which Gresser acquired any copyright rights possessed by Phillips or his corporation in the aerial photographs. (*See* Phillips Decl., attached as Ex. E of Gresser Decl.) Graphic designer Burton executed a letter (*see* Letter from Burton to Gresser of 3/15/98, attached as Ex. G of Gresser Decl.) and declaration (*see* Burton Decl., Ex. G of Gresser Decl.) stating to the same effect in March and November of 1998.

Meanwhile, in early 1998, Defendant Reno–Tahoe Specialty began work on producing its own digitally altered photographic image of the Las Vegas Strip. Defendant claims that its image was 85% complete before its graphic artist, Todd Johnson, even saw the Plaintiffs' depiction. (*See* Johnson Dep. at 27, attached as Ex. A to McCue Decl., Doc. # 61.) Johnson has, however, admitted to scanning and inserting at least six architectural works from the 1998 Image and inserting them into Defendant's products. (*See* Am. Johnson Aff. ¶¶ 3–9, attached as Doc. # 71.) Prior to insertion, Johnson created a "precursor image" while the computer was in "preview mode," from which he cut and manipulated the desired architectural components. (*See* Johnson Dep. at 53–54.)

Plaintiffs now move for partial summary judgment, claiming that the mere creation of a computerized precursor image, in preparation for the removal of the six architectural structures, violated Plaintiffs' exclusive right to reproduce its 1998 Image. In addition, Plaintiffs request an order from this Court finding that Defendant's insertion of the six architectural images into its products rendered them "derivative works," thereby violating Plaintiffs' exclusive rights to create derivative works and to distribute copies of its 1998 Image.

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *See Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable infer-

---

1. The "Las Vegas Strip," also known as simply "the Strip," is the four mile area of Las Vegas Boulevard on which many of the city's most famous casinos and resorts are located.

ences defeat the respondent's claims. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir.1982).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The substantive law defines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *See id.* If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.), *cert. denied*, 519 U.S. 868, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affi-davits that do not affirmatively demonstrate personal knowledge are insufficient. *See Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir.1996).

The Supreme Court cases cited above establish that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 1).

## IV. DISCUSSION

To prevail on a claim of copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright and (2) copying of protected elements of the copyrighted work. *SeeEntertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

### A. Ownership of A Valid Copyright

A threshold issue is whether Plaintiffs hold a valid copyright to the 1998 Image. Here, Plaintiffs have submitted a certificate of federal copyright registration. (*See* Gresser Decl.Exs. J, K.) While the original registration incorrectly labeled the 1998 Image as a "work made for hire"[2] (*see id.* Ex. J), such misstatements generally will not affect the validity of a copyright or bar an action for its infringement. *See Urantia Foundation v. Maaherra*, 114 F.3d 955, 963 (9th Cir.1997); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984). Inaccuracies in a certificate are of significance only in situations involving allegations of an intent to defraud or prejudice, *see S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th

---

2. A "work made for hire" is either (1) a work made by an employee or (2) a work specially commissioned for contribution to a collective work or as a part of an audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test or related material, or as an atlas. *See* 17 U.S.C. § 101. The 1998 Image does not fall into either of these two categories.

Cir.1989), which is not the case here. Otherwise, a certificate of registration will raise the presumption of valid copyright ownership. *See* 17 U.S.C. § 410(c); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109–10 (9th Cir.1998).

The factual and legal arguments proffered by Defendant do nothing to overcome this presumption. It is true that, as Defendant suggests, Plaintiffs' ownership rights to the 1998 Image depend in part upon its acquisition of copyrights to the photographs from which it was derived. The 1998 Image is a "derivative work," i.e., an image drawn in part from other photographic images of the Las Vegas Strip. [3] *See* 17 U.S.C. § 101.[3] "A derivative work copyright can only be obtained when the author legally used the material on which the derivative work was based." Marshall A. Leaffer, *Understanding Copyright Law* § 2.9[C] (1989).

 Here, photographer David Phillips, in a signed letter dated March 13, 1998, stated that he thereby "release[d] all copyrights attached to the Las Vegas poster [i.e., the 1998 Image] to Grant Gresser of Tiffany Design." (*See* Gresser Decl.Ex. D.) A signed writing will satisfy the requirements for the conveyance of federal copyrights. *See* 17 U.S.C. 204(a); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir.1990) ("If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do.") On April 8, 1999, Plaintiffs' rights to the underlying works were further strengthened by the execution of an "Affirmation of Assignment of Copyright Ownership" (*see* Gresser Decl.Ex. F.) by Phillips. *See*

*Magnuson*, 85 F.3d at 1429 (holding that post-conveyance execution of document confirming an assignment of copyrights will satisfy writing requirement).

Defendant also attempts to conjure up triable issues of material fact by submitting deposition testimony from Phillips indicating that fifty-seven of the approximately 974 photographs and slides from which the 1998 Image could allegedly have been based upon were not his work. (*See* Phillips Dep. at 82–84, 91–110, attached as Ex. 7 to Def.'s Opp., Doc. # 70.) As a result, Defendant argues that there are triable issues as to whether these allegedly anonymously-authored photographs were used in the 1998 Image and whether Plaintiffs acquired the copyrights to such photographs. This contention is without merit. In support of their motion, Plaintiffs have submitted evidence indicating that the works underlying the 1998 Image were drawn from photographs taken by both Phillips and Gresser. (*See* Supp. Gresser Decl. ¶ 2.) Phillips' deposition testimony, indicating the existence of photographs taken by someone other than himself, does nothing to contradict this version of events. Accordingly, this Court finds that Defendant has failed to overcome the presumption of copyright validity raised by the federal registration.

**B. Infringement of Protected Expression**

The second element of a prima facie case of copyright infringement is the copying of protected expression by the defendant. The term "copying" is really shorthand for the infringement of any of the copyright owner's exclusive rights outlined in 17 U.S.C. § 106. *See S.O.S., Inc.*, 886 F.2d at 1085 n. 3; *see also G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*,

---

**3.** This section states:
 A "derivative work" is a work based upon one or more preexisting works, such as a translation, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."
 *See* 17 U.S.C. § 101.

*Inc.*, 958 F.2d 896, 904 (9th Cir.1992). Plaintiffs here allege that Defendant violated their rights to: (a) reproduce copyrighted works; (b) prepare derivative works based upon the copyrighted work; and (c) distribute copies of the copyrighted work to the public by sale or other transfer of ownership. *See* 17 U.S.C. § 107(1) –(3). To dispose of these allegations, this Court must address two questions: (1) whether Plaintiffs' 1998 Image constitutes protected original expression and (2) whether Defendant's conduct constituted "copying" of that expression. The latter question will require this Court to examine two different types of conduct: Defendant's computer scanning of the 1998 Image and Defendant's creation of allegedly improper derivative images.

### 1. The 1998 Image as a Type of Protected Expression

Both parties agree that the 1998 Image is essentially a computer-enhanced photograph. Defendant, however, mistakenly contends that the contents or constituent elements of this work cannot constitute protected expression for purposes of the Copyright Act.

It is basic copyright law that a photograph possesses a wide range of protectable elements, including the posture of subjects, lighting, angle, selection of film and camera, the collective arrangement of points of interest to create pleasing configurations and the evocation of desired expressions or appearances. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60, 4 S.Ct. 279, 28 L.Ed. 349 (1884); *see also Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir.1992) (finding videotapes to be copyrightable due to conscious selection of camera lenses, exposures, viewer perspective and editing). Nimmer has stated that under this metric, it is the prevailing view that almost any photographic image will possess sufficient originality to support a copyright, barring the slavish reproduction of another photograph or work. 1 Nimmer, *Nimmer on Copyright* § 2.08[E][1] (1998). Here, Defendant's own graphic artist concedes that it scanned, at the very least, a substantial portion of the 1998 Image as a precursor to graphical manipulation and insertion of some of its elements into Defendant's allegedly infringing products. (*See* Johnson Decl. at 54, 106). While the parties dispute the exact extent of this borrowing, both sides agree that at least six architectural structures were removed from the precursor image and placed into Defendant's products. (*See* Def.'s Opp., Doc. # 70, at 16–17; Pl.'s Mot. for S.J., Doc. # 58, at 22.) The scanning of such sections from the 1998 Image would constitute the copying of original photographic elements.

Defendant's arguments to the contrary wither under close scrutiny. Defendant first asserts that its scanning and manipulation of six well-known Las Vegas landmarks cannot be actionable, since the owners of copyrights to "architectural works" may not prevent the making or distribution of pictorial representations of such structures if they are visible from a public space. *See* 17 U.S.C. § 120(a). This argument misconstrues the scope of federal copyright protections. The term "architectural works" refers only to the *design* of a building or structure. *See* 17 U.S.C. § 101. Thus, while an architect may not prevent a photographer from producing pictures of her buildings, *see R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 970 n. 5 (4th Cir.1999); *Demetriades v. Kaufmann*, 680 F.Supp. 658, 663 (S.D.N.Y.1988), that photographer may in turn certainly copyright those pictures, *see, e.g., Pagano v. Chas. Beseler Co.*, 234 F. 963, 963–64 (S.D.N.Y.1916) (copyrighting photo of New York Public Library and its surroundings). The disputed underlying work here is not a blueprint or structural floor plan. Instead, it is a visual work depicting Plaintiffs' original photographic and computer-enhanced interpretations of famous Las Vegas hotels and casinos. Any reference

to 17 U.S.C. § 120(a) would be simply inapposite to this case.

This Court is similarly unpersuaded by Defendant's argument that the 1998 Image constitutes a non-copyrightable "idea." (*See* Def.'s Opp., Doc. # 70, at 15.) It is true that copyright law protects only the original expression of an idea, not the idea itself. *See* 17 U.S.C. § 102(b); *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954). "Thus, ideas contained in a copyrighted work may be freely used so long as the copyrighted expression is not wholly appropriated." *Allen v. Academic Games League of America, Inc.*, 89 F.3d 614, 617 (9th Cir.1996). Reliance on this precept, however, misapprehends the issue at hand. Plaintiffs do not seek to copyright the idea of portraying an aerial image of the Las Vegas Strip at night. Rather, they seek to prevent the alleged usurpation of its artistic rendition of this view. Indeed, it is Defendant's alleged failure to rely on images drawn from its own photographs of the Strip that provides the basis for this lawsuit.

### 2. The Computer–Scanned Precursor Image as an Instances of "Copying"

Demonstration of the existence of protectable expression does not, however, end the analysis of Plaintiff's infringement claims. This Court must next determine whether the Defendant's conduct constituted actionable instances of "copying." Since direct evidence of copying is rarely available in copyright cases, federal courts must usually resort to examination of "circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir.1994) (citing *Brown Bag Software v. Symantec Corp.*,

960 F.2d 1465, 1472 (9th Cir.1992)). However, where the defendant actually admits to copying the protected work, reference to such tests is inapposite. *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir.1993).

▪ Here, Plaintiffs submit statements by Todd Johnson, Defendant's graphic designer, admitting that he had digitized or "scanned"[4] all or at least a large portion of the 1998 Image onto Defendant's computer. (*See* Johnson Dep. at 54, 106–107, attached as Ex. A of McCue Decl., Doc. # 61.) Both sides agree that the 1998 Image resided, at least temporarily, in the Defendant computer's random access memory (RAM). Defendant, however, disputes Plaintiffs' assertion that the mere scanning of an image as a precursor to manipulation of parts of that image can constitute an actionable instance of "copying."

Under federal copyright law, "copies" are "material objects ... in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. An object is "fixed" if "its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *See id.* In *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir.1993), the Ninth Circuit Court of Appeals affirmed the district court finding that a technician's unauthorized transfer of computer operating software from a permanent storage device to a computer's RAM constituted "copying." The court reasoned that loading the copyrighted software into the computer's RAM for a period of time long enough to

---

**4.** A scanner is a device that can capture and convert images into digital form, thereby allowing for computer storage and graphic manipulation. *See* Comment, *If This is the Global Community, We Must Be on the Bad Side of Town: International Policing of Child Pornography on the Internet*, 20 Hous.J. Int'l L. 205, 213–14 (1997).

allow viewing of the system's error log and diagnosis of the computer's ailments was sufficient to render it a "fixed" work. *See id.*

■ Contrary to Defendant's assertions, the application of *MAI* and its progeny has not been limited solely to the infringement of protected computer software. *See, e.g., Religious Technology Ctr. v. Netcom On-Line Communication Servs., Inc.,* 907 F.Supp. 1361, 1367–68 (N.D.Cal.1995) (texts by religious leader L. Ron Hubbard); *Playboy Enterprises, Inc. v. Webbworld, Inc.,* 991 F.Supp. 543, 551 (N.D.Tex. 1997) (adult photographs); *Marobie–Fl, Inc. v. National Ass'n of Fire Equip. Distribs. and Northwest Nexus, Inc.,* 983 F.Supp. 1167, 1177 (N.D.Ill.1997) (ready-made computerized black and white and color graphics). The prevailing view therefore seems to be that the digitization or input of any copyrighted material, whether it be computer code or visual imagery, may support a finding of infringement notwithstanding only the briefest of existence in a computer's RAM. *See* Bruce A. Lehman, White House Information Infrastructure Task Force, Intellectual Property and the National Information Infrastructure 65 & n. 202 (1995); 2 Nimmer, *supra,* § 8.08[A][1] ("[I]nput of a work into a computer results in the making of a copy, and hence ... such unauthorized input infringes the copyright owner's reproduction right."). This Court finds that Defendant's scanning of the 1998 Image and input of this precursor image into its computer, in preparation for further graphic manipulation and insertion into its own works, constitutes an act of copyright infringement as a matter of law.[5]

### 3. Defendant's Creation of Allegedly Derivative Images as an Instance of "Copying"

■ A different set of concerns, however, governs this Court's analysis of whether Defendant's allegedly infringing works violated Plaintiffs' rights to produce derivative works and to distribute copies of its work. The Ninth Circuit Court of Appeals has held that in order to establish the existence of an infringing derivative work, a plaintiff must show that the defendant's work substantially incorporated protected materials from the plaintiff's preexisting work. *See id.; Allen v. Academic Games League of America, Inc.,* 89 F.3d 614, 617 (9th Cir.1996). This is a burden that Plaintiffs have failed to support.

Plaintiffs attempt to circumvent this comparative analysis by citing cases such as *Norse v. Henry Holt & Co., supra,* and *Triad Systems Corp. v. Southeastern Express Co.,* 64 F.3d 1330 (9th Cir.1995), in which the Ninth Circuit Court of Appeals eschewed the substantial relations test in cases of direct copying. Reliance on these cases, however, is misplaced in view of the factual and legal posture of the matter before this Court. Unlike the situations in *Norse* and *Triad,* where direct copies of the copyrighted material were inserted into the infringing works, both sides agree that Defendant touched up or modified selections of the 1998 Image *before* inserting them into the infringing works. (*Compare* Pls.' Mot. for S.J., Doc. # 58, at 9 *with* Def.'s Opp., Doc. # 70, at 16–17). The parties, however, vehemently disagree as to the extent to which these borrowed images were modified.

---

5. It is true that at least one commentator has noted that decisions finding liability for the creation of digitized "intermediate copies" (i.e., the digitization of copyrighted images in order to manipulate or modify them) could potentially chill artistic expression in the twenty-first century. *See* Jeanne English Sullivan, *Copyright for Visual Art in the Digital Age: A Modern Adventure in Wonderland,* 14 Cardozo Arts & Ent.L.J. 563, 586 (1996) ("[M]ultimedia art ... could be infringing if any image briefly shown while morphing into another image, or transforming in response to the viewer's choices, is a copy of a copyrighted work. Scanning a representational work and then using a graphics program to render it abstract in order to change the composition or to add additional features may be an infringement, because the first step would involve the reproduction right.") Yet such concerns must be counterbalanced by the need to protect preexisting original expression.

Defendant maintains that it radically modified the lighting, appearance, color, and configuration of the scanned buildings to such an extent that they no longer resemble the elements from which they were scanned. (*See* Opp., Doc., #70 at 17–18; Johnson Dep. at 60–68.) Plaintiffs respond that despite these modifications, a number of characteristics were left within the scanned elements that were recognizably the work of the Plaintiffs. (*See* Pls.' Reply, Doc. #79, at 13; Burton Decl. ¶¶ 3–8.) In order to prove an act of "copying," a plaintiff must demonstrate both that the defendant performed actual duplication (i.e., performed copying as a factual matter) and that such copying is actionable as a legal proposition. *See* 4 Nimmer, *supra*, § 13.03. Here, the issue of whether Defendant used a sufficient amount of recognizable elements from the 1998 Image to constitute "substantial use" (i.e., an infringing derivative work) is a question of fact that should be decided during trial.[6]

This conclusion should not in any way be misinterpreted as an adoption of Defendant's novel argument that a copyrighted photograph or its derivative image can be reduced to its factual (i.e., uncopyrightable) components through the use of computer manipulation. The Court is unaware of any authorities supporting the proposition that a photograph can be somehow "sanitized" of its original elements. Indeed, many copyright authorities suggest that such excisions would be impossible. *See, e.g., Rogers v. Koons*, 960 F.2d 301,

307 (2d Cir.1992) (emphasizing inherently original aspects of photographic work). The key issue, instead, is whether Defendant's modification of things such as lighting, perspective, and shading were significant enough to render its use of the scanned images de minimis or unrecognizable in nature.

## C. Applicability of Defenses to the Scanning of the Precursor Image

While the existence of triable issues pretermit an analysis of the affirmative defenses of unclean hands and fair use with regards to Defendant's production of derivative images, this Court must still determine the applicability of these defenses to Defendant's admitted creation of a precursor image. In order to avoid summary judgment, a party asserting an affirmative defense will bear the burden of establishing sufficient facts to support a finding in its favor, *see Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.1997); *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994).

### 1. Unclean Hands

■ Defendant maintains that Plaintiffs committed an act of copyright infringement of their own by scanning Defendant's copyrighted postcard image, released in 1995, of buildings in downtown Las Vegas and incorporating these downtown structures into their poster and postcard depictions of that area in its 1997 products ("the 1997 Image").

---

**6.** It is unclear whether, as Plaintiffs contend, the distribution of unauthorized derivative works would also violate the exclusive right to distribute the 1998 Image. Under the Federal Copyright Act of 1976, a copyright owner has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). Nimmer has argued that the term "distribution" is nearly synonymous with the Act's use of the term "publication." *See* 2 Nimmer, *supra*, § 8.11. This commentator, in turn, suggests that publication of a derivative work would also constitute the publication of the preexisting works upon which it is based.

*See* 1 Nimmer, *supra*, § 4.12[A]. But in cases involving the alleged unauthorized production and sale of derivative works, like the one currently before this Court, plaintiffs have usually focused solely on the reproduction and derivative works provisions of section 106. *See, e.g., Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1397 (9th Cir.1997); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir.1988). The question does not need not be resolved at this time, however, given the existence of a triable issue as to whether Defendant actually created an infringing derivative work.

Application of the unclean hands defense is normally a question of fact. *See Los Angeles News Serv.*, 973 F.2d at 799. However, the defense is rarely recognized, *see id.*, and should be granted only where the alleged misconduct relates directly to the right asserted by the plaintiff, *see Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.1987); *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir.1963).

 As Plaintiffs point out, even assuming *arguendo* the veracity of the infringing nature of the 1997 Image, Defendant has failed to show how such misconduct is related to the issue of whether Plaintiffs may protect their rights to the following year's work—the 1998 Image. Here, the only evidence proffered by Defendant that the 1998 Image incorporated the allegedly usurped images of downtown Las Vegas consists solely of the entry in the copyright registration stating that the 1998 Image was "derivative" of the 1997 Image. (*See* Registration, attached as Ex. J to Gresser Decl.) Yet this submission in no way contradicts Plaintiffs' contentions that their 1998 Image was labeled as derivative from the work of the previous year due to its incorporation of background and lighting elements. (*See* Burton Decl., attached as Ex. A to Suppl. McCue Decl., Doc. # 77.) Plaintiffs have consistently asserted that the 1998 Image was otherwise created from photographs taken by Phillips and Gresser. (*See id.;* Suppl. Gresser Decl. ¶ 2.) The party opposing summary judgment must establish more than some metaphysical doubt about Plaintiffs' case. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

## 2. Fair Use

 Defendant likewise fails to meet its burden in establishing the applicability of the defense of fair use to its alleged misconduct. The doctrine of fair use permits the use of copyrighted materials in a reasonable manner without the consent of the copyright owner. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). In order to determine whether a use is fair, a district court should examine the purpose and character of the use, the nature of the copyrighted work, the amount of the portion used in relation to the copyrighted work as a whole, and the effect of the use upon the potential market for or value of work. *See* 17 U.S.C. § 107.

### a. Purpose of Use

 Defendant has conceded that its use of the copyrighted material in its finished product was for a commercial purposes. (*See* Opp., Doc. # 70, at 21.) A commercial purpose raises a presumption of unfair use, *see Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), though this presumption may be rebutted by the characteristics of the commercial use involved. *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir.1992) (citations omitted). It is true that, as Defendant contends, courts may excuse commercial copying where such activity is for transformative, nonsuperseding purposes. *See American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 921 (2d Cir.1994); *see also Sega Enters. Ltd.*, 977 F.2d at 1522–23 (finding intermediate copying of copyrighted computer code to be fair use due to defendant's intent to create compatible, non-exploitative software). Yet Defendant fails to demonstrate how its creation of a precursor image was for a non-exploitative, noncompetitive purpose. Here, Defendant raises two untenable arguments previously rejected by this Court: (a) that an artistic visual work can be reduced into "factual" components and (b) that loading an image into a computer's RAM does not constitute copying. *See* Discussion, *supra*. In the absence of any other ameliorating evidence, this Court finds the uncontrolled

use of scanned images to create directly competitive products to be inherently exploitative. *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987, 994 (9th Cir.1998) (noting that issue of whether user stands to profit from commercial use without paying customary price lies at heart of first fair use factor).

### b. Nature of Copyrighted Work

The second factor requires a district court to examine the nature of the copyrighted work. *See* 17 U.S.C. § 107(2). Creative works lie "closer to the core of intended copyright protection" than more factual or informational works. *See Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 586, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). Defendant recycles its ill-founded argument that the 1998 Image is merely "a compilation of facts with artistic expression added to them" and is therefore more akin to a city map. (*See* Opp., Doc. # 70, at 23.) While Defendant correctly states that the *idea* of showing the location of geographical landmarks on a tangible medium cannot be copyrighted, *see Kern River Gas Transmission Co. v. Coastal Corp.,* 899 F.2d 1458 (5th Cir.1990), the actual *portrayal* of compiled geographical facts in mediums such as maps is indeed copyrightable, *see* 17 U.S.C. § 101 (defining protectable pictorial works as including maps); *U.S. v. Hamilton,* 583 F.2d 448, 451 (9th Cir.1978) (finding maps with more than trivial selection of compiled elements to be copyrightable). And as stated, *supra,* the 1998 Image constitutes more than a mere "map" of famous Strip landmarks. It is a computer-enhanced photograph, with numerous original elements of lighting, perspective, shading, and subject orientation sufficient to support a copyright.

### c. Amount of Work Used

The third factor of fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 107 U.S.C. § 107(3). While Defendant cites deposition testimony in order to allege it had scanned only "six architectural structures" from the 1998 Image (Def.'s Opp., Doc. # 70, at 3–4), a full reading of that same testimony reveals an admission that Defendant's graphic artist had actually scanned all or most of the 1998 Image. (*Compare* Johnson Dep. at 107 ("I scanned the whole thing, I just did. I'm just trying to be truthful.") *with id.* at 106 ("I scanned in from, I guess, the bottom of the mountains to probably the bottom of the Luxor, so a good portion of it, yes.")) Thus, Defendant fails to raise any triable issues as to this factor as well.

### d. Effect Upon Plaintiff's Potential Market

The last factor to be considered by this Court is the effect that the precursor image would have upon the potential market for or value of the copyrighted work. *See* 17 U.S.C. § 107(4). While the undistributed scanned image itself would clearly have no direct impact upon the market, incorporation of its components into Defendant's finished products might have great effect upon commercial demand for Plaintiffs' depictions of the Las Vegas Strip. As Plaintiffs point out, Defendant has failed to submit any evidence whatsoever that its use of the precursor image did *not* affect Plaintiff's market. Accordingly, Defendant has failed to raise any triable issues as to this factor as well.

### V. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs Tiffany Design, Inc.'s and Grant Gresser's Motion for Partial Summary Judgment (Doc. # 58) is GRANTED, insofar as it requests a finding that Defendant Reno–Tahoe Specialty, Inc.'s creation of a scanned precursor image constituted a violation of Plaintiffs' exclusive right to reproduce copyrighted works under 17 U.S.C. § 106(1).

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. # 58) is DENIED, insofar as it requests a finding that Defendant's

alleged incorporation of scanned elements of this precusor image into Defendant's posters, postcards, calendars and maps constituted a violation of Plaintiffs' exclusive rights to create derivative works and to distribute its copyrighted work under 17 U.S.C. § 106(2) –(3).